## BOWER et al. v. DANIEL et al., Appellants.

#### Division Two, July 3, 1906.

1. **SPECIAL JUDGE: Refusal to Act: Election.** There is no statutory provision for the election of a special judge to perform the duties of the judge of another circuit who had been called in by the presiding judge to try a case, and who accepted the call and did in fact try the case and had exclusive jurisdiction of the whole controversy.

2. ————: **Absence: Election: Bill of Exceptions.** The presiding judge of the circuit was disqualified, and called in the judge of another circuit to try the cause, and after judgment, and motion for new trial, and approval of the bill of exceptions by him, respondents filed a motion to set aside the order approving the bill of exceptions, on the ground that the trial judge and respondents' counsel were misled and defrauded into approving and consenting to said bill, and that it did not contain the evidence actually given at the trial. The trial judge being absent, a member of the bar was elected special judge to pass on such motion, and sustained it, and set aside the order showing the filing of the bill. *Held*, that the authority of the trial judge, called in, continued until the whole controversy, including the signing of the bill of exceptions, was determined, and the special judge had no authority to set aside the order showing the filing of the bill, nor does the statute contain any warrant for the election of such special judge.

3. **BILL OF EXCEPTIONS: Appeals.** Where the abstract in an equity suit shows no record entry of the filing of the bill of exceptions, and none that a motion for a new trial was filed, and

198 Sup—19

Bower v. Daniel.

none as to what was done with such motion, and all the information to be gleaned from the abstract on these subjects is to be found in what purported to be the bill of exceptions itself, there is nothing before the appellate court but the record proper. In this case nothing but the pleadings was made a part of the record proper, even the decree being made a part of the purported bill.

4.   ————: ————: **Finding of Facts.** Where the court in an equity suit made a finding of facts, separate and apart from the conclusions of law and the decree, such finding will on appeal be taken as an agreed verdict, if the abstract has been so printed that the bill of exceptions cannot be considered.

5.   **WILL: Joint and Reciprocal: Made by Husband and Wife: Revocation.** An aged husband and wife, each possessed of a separate estate, executed a joint will, written on one paper and signed by both, disposing of their property separately to their children, the husband giving to the wife all his property during her life, then to be divided among their children; and the wife giving to the husband all her property during his life, and then at his death to be divided equally among their children. *Held*, it is evident from the will itself that they made said joint will for the purpose of distributing their property equitably among their children after their death; that its provisions were reciprocal and that but for the mutual bequests they would in all probability have made separate wills; and that as the husband, after the death of the wife, accepted the life interest in her estate, equity will enforce the provision of the will against him and all persons holding under him who took with notice of its provisions, or without value; and the share of each child in his estate will be determined by that will, and not by deeds executed by him after the wife's death in which he undertook to increase the shares of some children and to decrease the shares of others, nor by a subsequent individual will in which he undertook to revoke the reciprocal will and to still further discriminate among his children.

6.   ————: ————: ————: **Inducement: Proof.** Where a husband and wife make a joint will of their separate properties, it may be presumed from the will itself that the provisions made by the one were induced by the provisions made by the other.

Appeal from Atchison Circuit Court.—*Hon. H. C. Timmonds,* Special Judge.

AFFIRMED.

*J. W. Peck, H. S. Kelley* and *John P. Lewis* for appellants.

(1) Wills are ambulatory in character, and every will may be revoked by the maker thereof. Two persons may by contract bind each other to devise or bequeath his property to the other, but such compact is not a will. Edson v. Parsons, 50 N. E. 265. (2) The wills first made by Daniels and wife, though on one piece of paper, are two instruments. "The result is precisely the same as if like reciprocal dispositions had been made by the husband and wife by means of two separate instruments." In re Diez's Will, 50 N. Y. 94. (3) There is nothing in the instrument or in the pleadings or evidence to show that any interest in the estate of either passed to the other in the life of the testators. The instrument is testamentary only. Schumaker v. Schmidt, 4 Am. Rep. 135. (4) It was not a joint, mutual or reciprocal will. The disposition by one testator was not conditional upon, or in consideration of, the disposition made by the other. If the two instruments had been made on two pieces of paper, although contemporaneously made, it could not be pretended that the wills were mutual or reciprocal. In re Diez's Will, supra; Schumaker v. Schmidt, supra. (5) There is nothing in the will to support the idea of a compact. No agreement to make mutual wills is alleged, and if alleged such agreement could only be proved by writing. Gould v. Mansfield, 103 Mass. 408. (6) The instrument could only operate as will of one, to-wit, the one dying first. The husband gave the wife no inheritance. No one can claim anything through her under the will. The husband's will, as he survived, could not operate; the devise to his wife became a nullity. Her will as to him was personal and not upon condition that he should hold it in trust for or appoint it to any use. The accumulations from the use of her property during his life were his without condition,

and were not disposed of by the will, for the will as to him, if construed as a compact, only bound his estate. The other provisions in the instrument were purely testamentary and therefore revocable. All the husband was to do for the devise to him was to give his wife a life estate if she survived him. Even if the compact was irrevocable, the husband has performed his condition. He could do no more than bind himself to will his estate to her for her life, if she survived. That, according to defendants' contention, he has done. (7) If the instrument was a will, it was revocable. If not a will, it was a contract, and the parties at the time the instrument was executed must have had the capacity to contract with each other, and it must contain all the elements of a contract. The joint will was made May 2, 1889, when both parties were under the common law disability. Section 4335, Revised Statutes 1899, has not removed this disability. 60 Mo. App. 475.

*Hunt & Bailey* and *Geo. R. Ellison* for respondents.

(1) The trial court had jurisdiction to set aside the order, and having done so, there is no bill of exceptions in the record. 1. To make a bill of exceptions filed during a term of court a part of the record, there must be an order of record making it such. The mere filing will not have that effect. Fulkerson v. Houts, 55 Mo. 301; Johnson v. Hodges, 65 Mo. 589; Roush v. Cunningham, 163 Mo. 173; Wilson v. Railroad, 167 Mo. 323. 2. The fraudulent bill was filed during term time, and order making it a part of the record, relied on by appellants, was set aside in its entirety at the same term. The trial court had jurisdiction to set it aside, because any order or proceeding of a term of court remains *in fieri* during that term. A court retains plenary power, during a term, to review and revise any order made by it at such term. What it has

jurisdiction to do it has jurisdiction to undo, during the same term. Crawford v. Railroad, 171 Mo. 68; State v. Gartrell, 171 Mo. 489; Woodard v. Woodard, 84 Mo. App. 330; McGonigle v. Bresnen, 44 Mo. App. 423; Eddie v. Eddie, 138 Mo. 599; Baker v. Schutte, 85 Mo. App. 57. It was not an improper exercise of power to set aside the order on the ground that the bill of exceptions had been surreptitiously obtained. Railroad v. Culberson, 72 Tex. 384; Weir v. Hoss, 6 Ala. 885; State v. Howell, 117 Mo. 310; Baker v. Railroad, 122 Mo. 547. (2) If, as in the case at bar, an aged and infirm husband and wife, each owning property, make a will together for the purpose of distributing their property among their children after their death, and if it appears that the provisions of the will, made by one of them, were induced or influenced by the provisions made by the other, and that but for the bequests of the one, the other would have made a different will; or if such will was the result of mutual concessions and compromises between them, then on the death of one, especially if the survivor accepts the provisions of the will in his favor, equity will enforce the other provisions against him, or if he be deceased, then against all who hold under him, with notice or without value. In such case neither the Statute of Frauds nor the marriage relation will prevent a court of equity, on application of the beneficiary children under the will, from following the property wherever it may be, if not in the hands of innocent purchasers for value. And even before the death of the survivor, if it appears he is threatening to dispose of his property in violation of the provisions of the will, equity will enjoin him on application of the children, who would be prejudiced thereby. Carmichael v. Carmichael, 72 Mich. 75; Bruce v. Moon, 57 S. C. 60; Van Duyne v. Vreeland, 12 N. J. Eq. 142; Robinson v. Mandell, 3 Cliff. (U. S.) 169; Edson v. Parsons, 155 N. Y. 555; Murphy v. Whitney, 140 N. Y. 541.

BURGESS, P. J.—This is a suit prosecuted by plaintiffs, husband and wife, against the brothers and sisters of Mrs. Bower, to recover her interest in the estate, real and personal, of which her father, William Daniel, died the owner and in possession.

William Daniel, the father, and Margaret Daniel, the mother of the parties to this controversy, lived near Westboro, in Atchison county, Missouri, each owning real and personal property in his and her own right, the father owning eight different tracts of land, containing eighty acres each, also some town property and considerable personal estate. The mother owned eighty acres of land in Page county, Iowa, and some town property consisting of houses and lots, and some personal property. They were well advanced in years and had nine children, between whom they desired to distribute their property, and, to that end, on the 2nd day of May, 1899, they executed a joint will, written on one paper and signed by both parties, disposing of their said property separately; the father giving to the wife all his property, both real and personal, during her life; then to be divided, as therein directed, among his children, giving their daughter, Maggie Bower, lot 2, describing it; then giving to all their children all the rest of their property, to be divided equally, except that Ambrose and George Daniel should have $500 less, each. The fifth clause of the will, which is the mother's part thereof, gives to her husband, William Daniel, all of her property, both real and personal, during his life; then, at his death, to be divided equally among her children.

On the 24th day of December, 1894, Margaret Daniel departed this life, and on the 14th day of January, 1895, the will was probated as her last will and testament; and James Stull qualified as executor, and administered her estate pursuant to said will, the father

receiving the benefit of the life estate given to him in her property by said will, being the rent and profits arising therefrom.

On the 7th day of Septemer, 1895, the father, William Daniel, executed and delivered to each of his children a deed conveying to each a certain tract of land therein described containing eighty acres, being the land owned by him in his own right at the time of the execution of said will, except that he did not convey any part of his land to his daughter Hannah J. Sawyer. He conveyed to Maggie Bower the tract of land that was given to her by said will. These conveyances were intended as a division and distribution of his real estate (except town property, which he did not convey) among his children. He reserved a life estate and the rents and profits arising from said lands during his life.

On the 22nd day of February, 1895, the father, William Daniel, executed his last will and testament, revoking all other wills made by him, by which he gave to his daughter, Mrs. Hannah Jane Sawyer, the sum of five dollars, and all the balance of his property of whatever kind and nature and wherever located he gave in parts to his sons Absalom, Andrew J., James, George W. and William A., and his daughters Nancy Belle Lytle, Mollie Bailey and Maggie Bower, it being his intention that all his children except Hannah Jane Sawyer should share alike in the division of all his property.

On the 26th day of April, 1900, said father, William Daniel, departed this life, owning his said real estate, except what he conveyed to his said children, and a large personal estate. Shortly after his death the will made by himself and his wife was admitted to probate as his last will and testament, and afterwards, on the —— day of ——, his said will, dated the 22nd day of February, 1895, was found and filed in the probate court of Atchison county, Missouri, for the purpose of

being probated, and pending said proceeding to establish said will, the defendant Laur was appointed administrator of the estate of said William Daniel, deceased. This will was established by the judgment of the circuit court.

By this action Maggie Bower, the plaintiff, and Hannah Sawyer, claiming that the will executed by the father and mother is a joint will embodying a contract by and between said father and mother by which their property was respectively disposed of to and among their children as therein provided, and that said will was irrevocable and could not be revoked by the father, seek to recover such portions of the father's estate as they would have been entitled to under said will had its provisions been carried out. They claim that by reason of said will their father had no right to execute said deeds conveying his said lands to his said children, grantees therein, and that said conveyances having been accepted by said grantees, they and each of them are liable to said Maggie Bower and Hannah J. Sawyer for the value of one-ninth interest of each of them in and to said lands, and that they are also entitled to one-ninth each in the personal estate now in the hands of said special administrator; said Maggie Bower claiming that she was entitled to the eighty acres of land devised to her by her father in said joint will, and, in addition thereto, to an equal share, or one-ninth, in the remainder of her father's property, real and personal.

After the death of her father, under an arrangement between Hannah J. Sawyer and George W. Daniel, one of the father's grantees, five of the children who had received deeds from the father conveyed to Hannah J. their respective interests in the eighty acres that had belonged to the mother, and she made them quit-claim deeds to the lands deeded to them by the father. This George W. Daniel claimed was done in settlement of matters to avoid a lawsuit. Sawyer

claims that it was to be in settlement so far as the land was concerned. But three of the children did not exchange deeds under that arrangement, and some of the children sold and conveyed the land received from their father to third parties, and as to such lands Mrs. Bower and Mrs. Sawyer ask for personal judgment against them and that it be paid out of their interests in the estate.

The defendants deny that said Maggie Bower and Hannah Sawyer have any right to any of said property or any interest therein by reason of said alleged joint will. They deny that said will is in fact a joint one, although written upon the same paper and signed by both father and mother, and contend that it contains the separate will of each of said parents, by which it was intended that each should severally dispose of his or her own property and that neither participated in the disposal of the property of the other, or had any right to do so, and that this is clearly manifest upon the face of the will itself. They contend that said will does not embody any contract between said parties, and that it was revocable by either during his or her life, and that the father had the right to ignore said will, as he did by the execution of said deeds conveying his lands to those of his children named therein as grantees, and that he also had the right to execute the subsequent will by him executed, by which he disposed of all of his property among his children except said Hannah J. Sawyer, to whom he gave $5.

After the evidence was heard the court made and filed special findings of facts and conclusions of law, consisting of thirty-one paragraphs, which were spread upon the records of court, the parties agreeing that said findings should be taken as the facts except paragraphs 4, 5, 6, 7, 10, 12, 13, 14, 17, 23, 24, 25, 26, 27, 28, 29 and 30, to which the defendants objected and excepted.

The finding of facts, and the judgment and decree rendered thereon, are as follows:

"And now, on this 5th day of October, 1903, the same being the seventh day of the September term, 1903, of the circuit court in and for Atchison county, Missouri, this cause coming on to be heard and all the parties plaintiff and defendant appearing by their respective counsel and in person, and the cause being submitted to the court, and the evidence heard in full, the court doth find the facts to be:

"1.   That on or about the 2nd day of May, 1899, one William Daniel and one Margaret Daniel were husband and wife, residing in said county, and that on said date their children and only heirs were William A. Daniel, Andrew J. Daniel, George W. Daniel, James Daniel, Hannah J. Sawyer, whose husband is defendant William Sawyer; Maggie Bowers, whose husband is Dwight Bowers; Nancy Isabelle Lytle; and Mary E. Bailey, whose husband is James S. Bailey; and that the defendant Ora Daniel and the defendant Cleo Bower, whose husband is the defendant George Bower, are grandchildren of the aforesaid William and Margaret Daniel and children of their deceased son Absalom Daniel.

"2.   The court further find the facts to be that on said date the said William Daniel was the owner of a large amount of personal property and also of the following described real estate:  Lot No. two of the northwest quarter of section four, and lot No. two of the northeast quarter of section five, all in township sixty-six, of range thirty-nine; and the southeast quarter and twenty acres off of the west side of the northeast quarter and eighty-five and thirty-one-hundredths acres off of the east side of the northwest quarter, and forty-five acres off of the north side of the southwest quarter, in section thirty-two, township sixty-seven, range thirty-nine; all in said Atchison county, Missouri; also the southwest quarter of section twenty-seven, in township

sixty-seven, of range thirty-nine, in said Page county, Iowa; and also lot three, in block four, and lots five and seven and eight, in block seven, in the town of Westboro, in said Atchison county, Missouri.

"3 And the court doth further find that, on said date, the said Margaret Daniel was the owner of a large amount of personal property of the reasonable value of twenty-seven hundred dollars, and was also the owner in fee of the following described real estate: The south half of the northwest quarter of section twenty-seven, in township sixty-seven, of range thirty-nine, in Page county, Iowa, and lot one and the east half of lot two, in block six, and lots three and four, in block seven, in the town of Westboro aforesaid, and lot nine, in block thirteen, of the fourth addition to the town of Tarkio, in said Atchison county.

"4. The court further finds the facts to be that said William Daniel and Margaret Daniel had theretofore given to their said children in unequal portions various sums and articles of property; that, at the time aforesaid, they were aged and infirm and were desirous of making provision by will for distribution among their children of what remained of the aforesaid property, but there was between them a difference as to how said property should be distributed and as to the amount and value that should be left to each by their said wills; that it was the wish of said William Daniel that their said son Andrew J. Daniel should receive fifteen hundred dollars less than the other children; whereas, it was the desire of the said Margaret Daniel that said Andrew J. Daniel should receive substantially an equal portion of their said property to be left by will; and other differences between the said parents as to the property to be left to their said children existed.

"5. The court doth further find the facts to be that, in settlement and compromise of the aforesaid differences between the said parents, it was finally, on

the date first aforesaid, mutually agreed between them that they should make and duly execute a joint will, and by such will they should dispose of all their property, real and personal, in the following manner, to-wit: The survivor of said parents should take for the term of his or her life all the real and personal estate owned by the other, subject to his or her debts, and, after the death of both of said parents, the plaintiff Maggie Bower should have in fee all the aforesaid lot two of the northwest quarter of section four, in township sixty-six, of range thirty-nine, in said county of Atchison; and all the remainder of the property, both real and personal, should be divided equally among all said children, including said Maggie, except in the case of the defendants George and William A. Daniel, who should each receive five hundred dollars less than the other children of the estate owned and left by the said parents.

"6. The court doth further find the facts to be that, in pursuance to said mutual agreement and in consideration of the mutual concessions aforesaid, on the date aforesaid, the said parents did make, execute, publish and declare in due form their joint will and testament, embodying said agreement, which said will is in words and figures as follows:

" 'In the Name of God, Amen: We, William Daniel and Margaret Daniel, man and wife, of Westboro, Atchison county, Missouri; being of sound mind and memory, do hereby make, publish and declare this to be our last will and testament, hereby revoking and making void all former wills by us at any time heretofore made.

" 'First. We order and direct our executors, as soon after our decease as practicable, to pay off and discharge all the debts, dues and liabilities that may exist against us at the time of our decease.

" 'Second: I give and bequeath to my wife, Margaret Daniel, all of my property, both real and per-

sonal, to have and to hold during her lifetime, then to be divided as follows:

" 'Third: We give and bequeath unto our daughter Maggie Bower, to her and her heirs, the following land lying in Atchison county: All of lot two, of the northwest quarter of section four, of township sixty-six, of range thirty-nine, containing seventy-nine and twenty-two one-hundredths acres, according to the original survey.

" 'Fourth: We give and bequeath to all of our children all the rest of our property, both real and personal, to be divided equal, except our sons Ambrose and George Daniel to have five hundred dollars less each.

" 'Fifth: I, Margaret Daniel, give and bequeath unto my husband, William Daniel, all of my property, both real and personal, to have and to hold his lifetime, then at his death to be divided equal with all of my children.

" 'Sixth: We hereby nominate and appoint Hugh Doyle and James Stull as our executors.'

"7. The court doth further find the facts to be that, on or about the 24th day of December, 1894, and while said agreement and the aforesaid joint will were in full force and while the said father and mother still owned and were still in the possession of the said real estate and personal property hereinbefore set forth as belonging to them severally, the said mother, Margaret Daniel, departed this life, leaving surviving her the children aforesaid and her said husband, William Daniel, and the said husband, William Daniel, then and there accepted the provisions of said joint will as to her property, and received the rents, issues and products of her said lands and the interest and income from her said personal property, and thereby the said joint will became irrevocable as to said husband.

"8. The court doth further find the facts to be that said joint will was filed in the office of the probate court for said county, and, by the judgment of said

court, was duly and regularly proved and probated as the last will and testament of the said Margaret Daniel, deceased, on the 14th day of January, 1895, and the defendant James Stull was duly appointed and qualified as executor.

" '9. The court doth further find the facts to be that the said William Daniel, in disregard of his obligation and agreement aforesaid, as embodied in said joint will, and in violation of the rights of the plaintiff Maggie Bower and the defendant Hannah Sawyer arising from said joint will, the benefits whereof they at no time waived or relinquished, wrongfully undertook to dispose of all real and personal property hereinbefore first described as belonging to him, except his said lots in Westboro, and, in pursuance thereof and contrary to the provisions of said joint will, he, the said William Daniel, for the purpose of defeating the operation of the said joint will as to said Maggie Bower and said Hannah Sawyer, executed deeds of the lands hereinbefore first described, by which, without any valuable consideration, he conveyed said lands as follows: On the 7th day of September, 1895, to the defendant Isabel Lytle, all of lot two of the northeast quarter of section five, township sixty-six, of range thirty-nine, in said county and State of Missouri; on the 7th day of September, 1895, to the defendant George W. Daniel, the east half of the southeast quarter of section thirty-two, township sixty-seven, of range thirty-nine, in said Atchison county, Missouri; on the 7th day of September, 1895, to the defendant, William A. Daniel, the west half of the southeast quarter of section thirty-two, township sixty-seven, of range thirty-nine, in county and State aforesaid; on the 7th day of September, 1895, to the defendants James Daniel and Mollie Bailey, twenty acres off of the west side of the northeast quarter, and eighty-five and thirty one-hundredths acres off the east side of the northwest quarter, and forty-five acres off the north side of the southwest quarter

of section thirty-two, township sixty-seven, of range thirty-nine, all in said county and State; on the 7th day of September, 1895, to the child Andrew J. Daniel, the north half of the southwest quarter of section twenty-seven, township sixty-seven, of range thirty-nine, in Page county, Iowa; and on the 7th day of September, 1895, to his son Absalom Daniel, who is the deceased father of the defendants Ora Daniel and Cleo Bower, the south half of the southwest quarter of section twenty-seven, in township sixty-seven, of range thirty-nine, in Page county, Iowa; that said deeds were executed to the several children and are now of record and embody the interests of the plaintiff Maggie Bower and the defendant Hannah Sawyer in and to said lands.

"10. The court doth further find that, on said 7th day of September, 1895, the said William Daniel, for a valuable consideration then paid in the way of reservation of rents arising from the property, executed to plaintiff Maggie Bower a deed by which he conveyed to her the aforesaid eighty-acre tract, which was specifically devised to her by the said joint will; the consideration paid by said Maggie being an agreement to pay him rent on said lands during his lifetime.

"11. The court doth further find that, at the time the deeds aforesaid were executed by the said William Daniel, now deceased, each of the grantee children therein well knew of the existence of said joint will.

"12. The court doth further find the facts to be that, on the 22nd day of February, 1895, the said deceased William Daniel, for the purpose of avoiding the provisions of the said joint will, made, published and declared as his last will and testament the following:

" 'In the name of God, Amen: I, William Daniel, of the county of Atchison and State of Missouri, being of sound mind and memory and mindful of the desirability of providing for the distribution of my property at my death, do, for that purpose, make, publish and

declare this my last will and testament, hereby revoking all former wills by me made.

" 'It is my wish that all my lawful debts and funeral expenses be paid out of my estate.

" 'I give, devise and bequeath to my daughter, Mrs. Hannah Jane Sawyer, of Westboro, Atchison county, Missouri, the sum of five dollars in cash.

" 'I give, devise and bequeath the balance of my property, of whatsoever kind or nature the same may be and wheresoever located, in equal parts, to my sons Absalom, Andrew J., James, George W., William A., and my daughters, Mrs. Nancy Belle Lytle, Mrs. Mollie Bailey and Mrs. Maggie Bower, it being my desire that all of my children, excepting Mrs. Hannah Jane Sawyer, share and share alike in the division of all my property of whatsoever kind and wheresoever located to which I may be entitled at the time of my death.

" 'I hereby constitute and appoint James Stull, of Atchison county, State of Missouri, as executor of this my last will and testament.

" 'In witness whereof, I, William Daniel, have hereunto set my hand and affixed my seal this 22nd day of February, A. D. 1895.'

"13. The court doth further find the facts to be that, by the will last aforesaid, the said William Daniel sought and undertook to devise and bequeath all his real and personal property aforesaid, not included in the deeds aforesaid made by him to his said children, in a manner materially different from the provisions of the said joint will in reference thereto; that, by said last-mentioned will, the defendant daughter, Hannah J. Sawyer, is given five dollars only of the personal estate and no part of the real estate, whereas, by the said joint will and an agreement on which it was founded, the said father, William Daniel, undertook and agreed as aforesaid to leave to said Hannah a one-ninth part of all the real estate owned by him when said joint will was executed, except the land specifical-

ly devised to the plaintiff Maggie Bower, and to leave to her, the said Hannah, and all the other children aforesaid an equal share of his personal estate, except in the case of William A. Daniel, who is named in said joint will as Ambrose Daniel, and George Daniel, each of whom was, in said joint will, given five hundred dollars less each than the other children aforesaid; that, by the will last aforesaid, the said William A. and George are each given a one-eighth part of said personal estate, instead of a one-ninth part thereof, less five hundred dollars each, as provided in said joint will.

"14. The court further finds the facts to be that, by the joint will aforesaid, the plaintiff Maggie Bower was given a one-ninth interest in all the personal estate, except that said William A. and George were to get five hundred dollars less than the other heirs, and, by the will last aforesaid, the aforesaid William Daniel sought wrongfully to deprive the said Maggie of a portion of her interest in and to said personal property as the same is secured by said joint will.

"15. The court doth further find the facts to be that, on the 26th day of April, 1900, the said William Daniel departed this life possessed of the aforesaid personal property, which was converted into cash by the executor named in the will last aforesaid, under the order of the probate court for said county, where said will was probated, and that, of said cash, after paying all debts and liabilities of said estate, there now remains on hand in charge of the defendant George A. Laur, as administrator *pendente lite,* the sum of forty-two hundred and fifty dollars and seven cents.

"16. The court doth further find the facts to be that neither the estate of the said William Daniel, deceased, nor the estate of the said Margaret Daniel, deceased, is indebted or encumbered in any manner, except for the costs of administration.

198 Sup—20

"17.   The court doth further find the facts to be that, after receiving the aforesaid deed from William Daniel, the father, the said Andrew J. Daniel, on the —— day of—— , conveyed the land therein described to Robert M. Stevenson, who was and is an innocent purchaser for value from said Andrew J. Daniel, without notice of any claim or right in and to said land on the part of said Maggie Bower or said Hannah J. Sawyer; that on or about the —— day of ————, the deceased Absalom Daniel, father of the defendants Cleo Bower and Ora Daniel, conveyed the land which his father, the said William Daniel, had conveyed to him as aforesaid, to one Henry Hamilton, who was and is an innocent purchaser for value from said Absalom, without notice of any of the rights or equities of the said Maggie Bower or Hannah Jane Sawyer; that, on the 4th day of March, 1897, the said William A. Daniel, described in said joint will as Ambrose Daniel, conveyed to defendant George W. Daniel the land aforesaid which the said father, William Daniel, had conveyed to said William A., and that the said George W. Daniel is now in the possession of said land, claiming to own the same, and the said land, so in the hands of the said George W. Daniel, is subject to the rights and equities of the aforesaid Maggie Bower in and to the same, as provided in said joint will.

"18.   The court doth further find the facts to be that, on the 12th day of November, 1901, the defendant Isabel Lytle, widow, conveyed to Benjamin Wheeler the aforesaid lands deeded to her as aforesaid by her father, William Daniel, and, by mesne conveyances, the title thereto now rests in the defendant George Peck, for value, who now holds the title without notice of the aforesaid equities and rights of the said Maggie Bower.

"19.   The court further finds the facts to be that the defendant Mollie Bailey and the defendant James Daniel, by deeds between them, divided the aforesaid

lands conveyed to them jointly by their said father, William Daniel, as aforesaid, and the said Mollie Bailey afterwards conveyed her part to an innocent purchaser for value, without notice of the rights and equities of the plaintiff Maggie Bower under said joint will.

"20. The court doth further find that, after the division as aforesaid between the said James and Mollie Bailey, the part owned by said James is as follows: The east thirty-two and sixty-six hundredths acres of the northwest quarter and the west twenty acres of the northeast quarter of said section thirty-two, township sixty-seven, of range thirty-nine.

"21. The court doth further find the facts to be that the defendant George W. Daniel and the defendant James Daniel each holds and is now in possession of the tracts severally conveyed to them as aforesaid by their said father, William Daniel.

"22. The court doth further find the facts to be that, after the death of both said father and mother such of her personal estate as remained at the father's death was administered and distributed among all said heirs in harmony with the provisions of said joint will as to her, and all her real estate aforesaid was received by the nine heirs of the said William and Margaret Daniel, deceased, and disposed of by them as owners thereof in equal parts, in harmony with the provisions of said joint will as to her.

"23. The court doth further find the facts to be that the defendant Hannah J. Sawyer, her husband joining for that purpose, by sufficient deed, released and conveyed severally to said William A., George W. and James Daniel and Mollie Bailey and Isabel Lytle, the interests of said Hannah under said joint will in and to the several tracts severally held by them under the deeds from their said father, and, in consideration thereof, the said William A., George W. and James Daniel and the said Mollie Bailey and Isabel Lytle conveyed to the defendant Hannah J. Sawyer their

several interests under the said joint will in and to the aforesaid eighty acres of land owned by the aforesaid mother, Margaret Daniel.

"24. The court doth further find the facts to be that the said Hannah J. Sawyer is, under the provisions of the said joint will, entitled to a one-ninth interest in and to each of the aforesaid tracts of land conveyed as aforesaid by said father to Andrew J. Daniel and Absalom Daniel, but that she is deprived of her rights and interests therein by reason of the fact that said Andrew J. Daniel and Absalom Daniel have conveyed to innocent parties for value the said tracts of lands so conveyed to them by their father.

"25. Wherefore, the court doth find that, as to the interests of said Andrew J. Daniel and his assignee, J. W. Peck, and as to the interests of the heirs of Absalom Daniel, now deceased, in and to the aforesaid money belonging to said estates, now in the hands of the administrator *pendente lite,* the said Hannah J. Sawyer is entitled to compensation for the loss of her interest in the land last aforesaid out of the same, and, in addition thereto, the said Hannah J. Sawyer under and by virtue of said joint will, is entitled to an interest in all the aforesaid money divided among the nine heirs in such manner that the said William A. and George W. Daniel shall each get five hundred dollars less than the other heirs, who shall get equal portions thereof, except in the cases of said George and William A., as aforesaid.

"26. The court doth further find the facts to be that the plaintiff Maggie Bower, under and by virtue of the provisions of the said joint will, became entitled to an one-ninth interest in and to every one of the aforesaid tracts of land conveyed as aforesaid by said father to said Andrew J., Absalom, William A., George and James Daniel and to said Isabel Lytle and Mollie Bailey, and to an interest in said money now remaining on hand so distributed as that William A. and

George W. shall each get five hundred dollars less than the other seven heirs, whose interests are equal portions, subject to the rights and equities hereinafter set forth.

"27. The court doth further find the facts to be that, by reason of the conveyances aforesaid from the said Andrew J., Absalom and Isabel Lytle and Mollie Bailey, of the lands which their said father, William Daniel, had conveyed to them as aforesaid, to innocent parties for value, the said Maggie Bower has been deprived of her interest aforesaid in said tracts of land so conveyed, and she is now entitled to the extent of one-ninth of the value of each of the aforesaid tracts at the time the said conveyances were made to said innocent third parties, to have and recover from the defendant J. W. Peck's interests as assignee of the said Andrew J., and from the aforesaid heirs of Absalom and from Isabel Lytle and Mollie Bailey their several interests in and to the aforesaid money to the extent of the value of one-ninth interest in and to said lands as aforesaid.

"28. And the court doth further find that the said Maggie Bower is now entitled to, under and by virtue of said joint will, an undivided one-ninth interest in and to the lands conveyed by the father, William Daniel, to George W. Daniel, and to the tract which James Daniel obtained on division between him and his sister, Mollie Bailey, as aforesaid, and to the tract aforesaid obtained by William A. Daniel.

"29. The court doth further find the facts to be that, at the time of the conveyances from the father to his children aforesaid, the tract conveyed to Andrew J. Daniel was of the value of $2,400, and the tract conveyed to Absalom Daniel was of the value of $2,400, and the tract conveyed to William A. Daniel was of the value of $3,600, and the tract conveyed to George W. Daniel and which he now holds was of the value of $3,600, and now is of the value of $5,000, and the tract

obtained by James Daniel was of the value of $2,625, and now is of the value of $3,250, and the tract conveyed to Isabel Lytle was of the value of $3,600, and the tract obtained by Mollie Bailey was of the value of $2,625.

"30. The court doth further find the facts to be that, in accepting the aforesaid deeds from their father, William Daniel, the said defendant heirs and the said A. J. Daniel severally received the lands therein described as their respective shares in their father's real estate.

"31. And the court doth further find the facts to be that, in each of the aforesaid deeds from the father, William Daniel, to the defendant heirs and the children Absalom and Andrew J. Daniel, a life estate was reserved to the said father and that each of said deeds was filed for record in the recorder's office in the respective counties in which said lands are located on the 17th of September, 1895.

"Thereupon, the court doth render the following decree in the above-entitled cause, which is duly entered of record, to-wit:

"It is therefore ordered, adjudged and decreed that the defendant Hannah J. Sawyer have and recover of the money now on hands in the possession of the administrator *pendente lite* aforesaid a distributive share with the other eight heirs so distributed as to give the said William A. and George W. each five hundred dollars' less than the other distributees.

"It is further ordered and adjudged that the said Hannah J. Sawyer, in lieu of her interest in the real estate conveyed by the said father, William Daniel, to his child Absalom Daniel (the father of Ora Daniel and Cleo Bower), amounting to $266.66, and in lieu of her interest in the lands conveyed by said father to Andrew J. Daniel, amounting to $266.66, have a lien on the distributive share of the said Andrew J., free of the claims of said J. W. Peck, and the said heirs of Absa-

lom in and to the personal property or money, respectively, subject to the payments of all debts of the estate and the costs of administration, which is now in the hands of said administrator *pendente lite;* and it is further ordered, adjudged and decreed that the said administrator *pendente lite,* in making distribution of the aforesaid moneys in his hands, discharge said liens by paying to the said Hannah J. Sawyer and to the said Maggie Bower, in equal portions, out of the shares of the said Andrew J., free from the claims of said J. W. Peck and the said heirs of Absalom.

"It is further ordered, adjudged and decreed that the plaintiff Maggie Bower have and recover out of the aforesaid money now in the hands of the said administrator *pendente lite* an equal share with the heirs aforesaid, after paying to the said William A. and George W. each five hundred dollars less than the others.

"It is further ordered, adjudged and decreed that the said Maggie Bower have and recover of George W. Daniel a one-ninth interest in value of the aforesaid lands conveyed by the said father William to said George, amounting to $555.55, and to said William A. amounting to $400, and that the said sums be and the same are hereby made a lien on said lands, described as follows, to wit: The east half of the southeast quarter of section thirty-two, township sixty-seven of range thirty-nine, Atchison county, Missouri, and the west half of the southeast quarter of section thirty-two, township sixty-seven, range thirty-nine, in said county.

"It is further ordered, adjudged and decreed that the said George W. Daniel have six months within which to pay off and discharge said lien, and if, within that time, the same be not so paid off and discharged, the said Maggie Bower have special execution therefor against said land.

"It is further ordered, adjudged and decreed that the said Maggie Bower have and recover of the said

James Daniel one-ninth in value as of this date of the lands deeded as aforesaid by said father William to said James, amounting to $361.11.

"It is further ordered, adjudged and decreed that said sum be and same is hereby made a lien of the said James's part of the said land so conveyed by the said setting out substantially the same grounds therefor as follows, to wit: The east thirty-two and sixty-six one-hundredths acres off of the northwest quarter and the west twenty acres off the northeast quarter of said section thirty-two, in township sixty-seven, of range thirty-nine, Atchison county, Missouri.

"It is further ordered, adjudged and decreed that the said James Daniel have six months in which to pay off and discharge said lien, and if, at the end of that time, the same be not so paid off and discharged, then that the said Maggie Bower have special execution against the aforesaid last-described lands.

"It is further ordered, adjudged and decreed that, in lieu of the interests aforesaid of said Maggie Bower in and to the several tracts conveyed by the said father, William Daniel, to Isabel Lytle, Mollie Bailey, Absalom Daniel and Andrew J. Daniel, she have and recover from the money now in the hands of the said administrator *pendente lite* said Isabel Lytle's share, to the extent of $400, and the said Mollie Bailey's share, to the extent of $291.66, and the share of the said Ora Daniel and Cleo Bower, as children of Absalom Daniel, to the extent of $266.66, and the said Andrew J. Daniel's share, free from the claims of the defendant J. W. Peck thereon, to the extent of $266.66.

"It is further ordered, adjudged and decreed that, wherein the said Maggie Bower and Hannah J. Sawyer are awarded and given liens on the same funds now in the hands of said administrator *pendente lite,* if the said funds are not sufficient to pay the said Maggie and Hannah J. in full, then the same shall be paid and

awarded to them pro rata according to their respective claims herein awarded.

"It is further ordered, adjudged and decreed that the costs of this proceeding be taxed against the defendants William A. Daniel, George W. Daniel, James Daniel, Isabel Lytle, Mollie Bailey and Ora Daniel and Cleo Bower as one, in equal portions, except as to the costs made by the defendants Benjamin Wheeler, Robert M. Stevenson, Hugh Doyle, Henry Hamilton, George Peck, James Stull and George A. Laur, and as to all costs made by them or arising from their having been made defendants against the said Maggie Bower and Hannah J. Sawyer in equal portions."

In due time the defendants William A. Daniel, George W. Daniel, James Daniel, Belle Lytle and Mollie Bailey and J. G. Bailey, her husband, Ora Daniel, Cleo Bower and George Bower, her husband, and J. W. Peck filed their motions for a new trial in the above-entitled cause, as follows, to-wit:

"Come now the defendants, William A. Daniel, George W. Daniel, James Daniel, Belle Lytle, Mollie Bailey and J. G. Bailey, her husband, Ora Daniel, Cleo Bower and George Bower, her husband, and J. W. Peck, and move the court to set aside the finding and judgment of the court and grant a new trial for the following reasons:

"1. The findings of the court are against the evidence and the weight of the evidence.

"2. The evidence does not support the finding of the court.

"3. Under the evidence the finding should have been for these defendants.

"4. The decision of the court is contrary to the law of the case.

"5. The court erred in admitting evidence objected to by these defendants.

"6. Upon the whole case, the finding and judgment should be for these defendants.

"7.   The court erred in concluding the law to be for plaintiffs and the defendants Hannah J. Sawyer and William Sawyer, her husband."

The same defendants also filed motion in arrest, setting out substantially the same grounds therefor as in the motion for new trial. Both motions were overruled, and said defendants saved exceptions and bring the case to this court by appeal for review.

Respondents contend that there was no proper bill of exceptions filed in this case.   They admit that defendant's counsel did file an alleged bill of exceptions, duly allowed by the trial judge, which was made part of the record in this cause by an order entered of record.   But they say that afterwards, during the same term, on motion of respondents, the court set aside the order on the ground that the trial judge and opposing counsel were misled and defrauded, and were thereby induced, the latter to approve and the former to sign, the said alleged bill of exceptions, and on the further ground that the same did not contain the evidence as actually given at the trial.

The record discloses that on Tuesday, February 2, 1904, the 8th day of the January term, 1904, the plaintiffs being desirous of filing a motion to set aside the order of the court making the bill of exceptions part of the record, and Hon. H. C. Timmonds, then judge of the twenty-sixth circuit, before whom the case was tried, being absent, and the regular judge of the court, Hon. W. A. Ellison, being disqualified to sit in the cause, the clerk of the court held an election by the members of the bar to elect a special judge to act in said cause, which resulted in the election of Hon. C. A. Anthony, who qualified as such judge, and upon a hearing of such motion, sustained the same, and the order making the bill of exceptions part of the record was set aside.   On the same day appellants filed their motion to set aside the order of the court setting aside the order made January 25, 1904, directing the filing of the bill

of exceptions in this cause, and to reinstate said bill of exceptions as part of the record, upon the grounds that there was not sufficient evidence upon which to base said last-named order, and because the court, Hon. C. A. Anthony, was without authority to act upon said motion. This motion was overruled, and appellants duly excepted. The question, therefore, is as to whether Judge Anthony had authority to make the order setting aside the order of the court that the bill of exceptions be filed.

By section 1678, Revised Statutes 1899, it is provided: "Whenever the judge of any circuit shall be sick, absent, or from any cause unable to hold any term or part of term of court in any county in his circuit, such term or part of term of such court may, by request of the judge, be held by the judge of any other circuit; and at the request of the judge of any circuit, any term of court or part of the term in his circuit may be held by the judge of any other circuit, who shall, during the period he shall so act, possess the same powers and be liable to the same responsibilities as the judge of said circuit." It has been held that the authority of such judge, called in, continues until the whole controversy, including the signing of a bill of exceptions, has been fully and finally determined. [Nebraska Manufacturing Co. v. Maxon, 23 Neb. 224; Harris v. Musgrave, 72 Tex. 18; 1 Elliott's General Practice, sec. 228.] The statute, in this connection, is purely remedial, and should be liberally construed with a view to promoting the ends of justice. Judge Timmonds, having tried the case, did not lose jurisdiction over it; and he alone had authority to make the order setting aside the former order directing the entry showing the filing of the bill of exceptions, and to make any and all orders pertaining to the case. It would be establishing a dangerous precedent to hold that Judge Anthony had the power to review the acts of fraud and deception alleged to have

been practiced upon Judge Timmonds by appellants, by reason of which he was induced to sign the bill of exceptions, and to hold that his approval of the bill was so obtained, in face of the fact that he was the sole judge of that matter, and signed and approved the bill. If this could be done, why could not Judge Anthony have annulled and set aside all orders made by Judge Timmonds during the trial of the cause, notwithstanding the latter had sole jurisdiction over it? No lawyer would contend for any such authority in Judge Anthony. While the statutes (secs. 1679 and 1681, R. S. 1899), provide for the *election of a special judge,* and, in the event of his failure or refusal to act, or inability to properly preside, for the election of another person, from time to time, until a suitable person be chosen who can and will preside, there is no provision for the election of a special judge to perform the duties of the judge of another circuit who has been called in by the presiding judge of the circuit court to hold the term or part of the term of the court, and who accepts the call and does in fact try the case, and has exclusive jurisdiction of the whole controversy; nor do we think any such authority exists. We are, therefore, of the opinion that the election of Judge Anthony as special judge was without authority of law, and all proceedings by him in this case absolutely void.

It is also insisted by respondents that the abstract is so imperfect and incomplete that nothing except the record proper can be considered upon this appeal.

The case is brought before this court under the provisions of section 2253, Revised Statutes 1889, and Rule 11 of this court, by filing with the clerk a copy of the judgment or decree in lieu of a complete transcript. Rule 13 of this court provides that "the abstract mentioned in Rule 11 shall be printed in fair type, and shall be paged and shall have a complete index at the end thereof, and shall set forth so much of the record as is necessary to a full and complete

understanding of all the questions presented to this court for decision. . . . The evidence of witnesses shall be stated in narrative form, except when the questions and answers are necessary to a complete understanding of the evidence.''

After the pleadings, set out in the abstract, there immediately follows what is called the bill of exceptions, in which matters of record and of exception are so intermingled that it is difficult to determine what is matter of record and what matter of exception. From the abstract, everything appears as part of the bill of exceptions, which contains not only the evidence, findings, rulings, exceptions, motions for new trial and in arrest, but also all of what purports to be the entries in the record proper, including the decree itself. Aside from the pleadings and the order making the bill of exceptions a part of the record, there is no reference to any record entry except as they appear in the bill of exceptions.

The only information imparted to the court with respect to the filing of the motions for new trial and in arrest, and as to their disposition and the time allowed by the court within which to file a bill of exceptions, is that gleaned from the bill itself. These are matters which can only be preserved in the record proper. Nor is the evidence of the witnesses stated in the abstract in narrative form, as required by said Rule 11, but by question and answer, just as it appears in the bill of exceptions, and copied in full.

As stated, outside the bill of exceptions, no record entry appears, nor anything showing that the bill of exceptions was ever filed. Under such circumstances, there is nothing before us for review except the record proper. ''Even if it appeared that the bill had been filed, its recitals could not supply the other necessary record entries.'' [St. Charles ex rel. v. Deemar, 174 Mo. 122; Butler County v. Graddy, 152 Mo. 441; Ricketts v. Hart, 150 Mo. 64; Lawson v. Mills, 150 Mo.

428; Western Storage & Warehouse Co. v. Glasner, 150 Mo. 426; Crossland v. Admire, 149 Mo. 650; Walser v. Wear, 128 Mo. 652; Ferguson v. Thacher, 79 Mo. 511; Pope v. Thomson, 66 Mo. 661; McGrew v. Foster, 66 Mo. 30.] No matter of exception can, therefore, be considered on this appeal.

The court made a finding of facts, separate and apart from the conclusions of law declared by it in the decree rendered, and as no exceptions, even if made, can be considered on this appeal, for the reasons already stated, such finding stands as a special verdict or an agreed case; and if the conclusions of law, under the facts as found, be correct, the judgment will be affirmed, otherwise reversed. [Blount v. Spratt, 113 Mo. 48; Freeman v. Moffitt, 119 Mo. 280; Land Company v. Bretz, 125 Mo. 418; Loewen v. Forsee, 137 Mo. 38; Hughes v. Ewing, 162 Mo. 261.]

Appellants insist that the judgment and decree is erroneous in this, to-wit:

1. That by it Hannah J. Sawyer is given a distributive share of the estate, with the other eight children, in the money in the hands of the administrator, so distributed as to give William A. and George W. Daniel $500 less, each, and to give her $266.66 as the value of her interest in the land conveyed by her father to Absalom Daniel (father of Ora and Cleo Daniel), and the sum of $266.66 as for and in lieu of her interest in the land conveyed by the father to Andrew J. Daniel, and giving her, for said sums, a lien on the money and personal estate in the hands of the administrators, and ordering them to pay and discharge said liens out of the distributive shares going to said Absalom, or his heirs, and to said Andrew J., or his assignee, J. W. Peck.

2. That the decree then proceeds and does, in like manner, order that plaintiff, Maggie Bower, shall be paid an equal sum with the other children of the personal estate of her father, so divided as to give Wil-

liam A. and George $500 each less than the others get, and that she recover $555.55 from George W. and $400 from William A. for her alleged interest in the lands conveyed to them, making these sums a lien on the lands, and giving six months in which to pay them, and in default special execution to issue; and that she recover of James $361.11 for a one-ninth interest in the land conveyed to him, and that she recover of Isabel Lytle $400, and of Mollie Bailey $291.66, and of the children of Absalom $266.66, and of Andrew J. Daniel's share, free from J. W. Peck's claim, $266.66, and that said sums shall be liens on the respective shares of said parties in the funds in the hands of said administrator, and then provides that, in case there are not sufficient funds to pay Maggie Bower and Hannah J. Sawyer the sums awarded them against the same defendant, they shall be paid pro rata.

The appellants insist that no contract between the father and mother was proven by which either was given the right to participate in the disposal of the other's property, nor by which a joint disposition of this property was made or attempted. That the only thing in the will that indicates, or from which it can be inferred, that there was any understanding between the father and mother as to how their joint will should be made is the fact that each gave the other a life estate in his or her property which could only benefit the survivor. That if he had died first she would have enjoyed his gift to her of a life estate in his property, but as she died first the contingency happened which gave him a life estate in her property and revoked or destroyed the will so far as it gave her an interest, and left him in the enjoyment of his property as though no will had been made, with the right to dispose of it as he pleased. That the children derived from the will no direct interest in the property of either, the interest being contingent and depending on the existence of the will at the death of both parents. That the parents could have

revoked the will, and thereby destroyed the prospective rights of the children, and when the mother died the father had a right to revoke it so far as it affected his property. That if the children had a vested right under the will, neither parent, nor both, could have revoked it. That, with this understanding of his rights in the premises, the father revoked that will by the execution of another, and also ignored it by the deeds conveying his real estate to the children.

Although the doctrine of joint wills is in a somewhat confused state, the current of authority seems to favor the validity of both joint and mutual wills. "A joint will, or in other words, a single instrument containing the wills of two or more persons, may be probated upon the death of one of the testators as his will, and, unless revoked subsequently, may again be probated upon the death of another of the testators as the will of the latter. . . . A mutual will, or, strictly speaking, a reciprocal will, is one by which each testator makes a testamentary disposition in favor of the other. Such a will is unquestionably valid and is entitled to probate upon the death of the other party." [30 Am. and Eng. Ency. Law (2 Ed.), 556; Schumaker v. Schmidt, 44 Ala. 454; Dias v. De Livera, 5 App. Cases 123; In the Matter of Diez, 50 N. Y. 88; Cawley's Estate, 136 Pa. St. 628.]

Under the laws of this State in force at the time of the execution of the joint will, husband and wife could contract each with the other with respect to their respective properties. [Rice, Stix & Company v. Sally, 176 Mo. 107; Lewis v. Scofield, 26 Conn. 452.]

The court found that the mutual will was made between the husband and wife in pursuance of a previous arrangement between them, and this we think is borne out by the will itself, and, there being no evidence to the contrary before us, that finding cannot be questioned.

It is evident from the provisions of the mutual or joint will that this aged or infirm couple, each owning property, made said will together for the purpose of disposing of and distributing their property equitably among their children after their death; that the provisions of the will were reciprocal, and that but for these mutual bequests the parties would in all probability have made separate wills. After the death of the testatrix, her husband, William Daniel, accepted the provisions of the will in his favor, and under such circumstances equity will enforce the provisions of the will against him and all persons holding under him who took with notice of its provisions, or without value. Courts have gone even further, and held that if the survivor is threatening to dispose of his property, in violation of the provisions of the will, they will grant relief by way of injunction, upon application of the children who would be prejudiced thereby. [Carmichael v. Carmichael, 72 Mich. 76; Bruce v. Moon, 57 S. C. 60; Van Duyne v. Vreeland, 12 N. J. Eq. 142; Robinson v. Mandell, 3 Cliff. (U. S.) 169; Edson v. Parsons, 155 N. Y. 555.]

The court found that the testator and testatrix, when making the will, were disposing of the properties which they then owned, and by the terms of the will conferred upon the survivor the power of unrestricted disposition of the property embraced in the will; but that the testator, being the survivor, could only dispose of the property in good faith, and not merely for the purpose of defeating the joint will in its operation upon himself. If the survivor executed voluntary deeds to the property, with the object of defeating the provisions of the joint will with respect to his own obligations, reserving to himself a life estate, such deeds are void as to the devisees under the will.

Bruce v. Moon, supra, was an action brought by the plaintiff to enforce the performance of an agree-

198 Sup—21

ment which she claimed to have entered into with one Alexander H. Moon, the father of the defendant therein, by the terms of which the plaintiff was to live with and take care of the said Alexander H. Moon, in consideration whereof he was to give her all of his property. Plaintiff entered upon the performance of her duties, under her agreement, and the said Alexander H. Moon made a will by which he gave her all of the lands and personal property of which he might die possessed. About six years after the execution of this will he executed a deed to his lands and a bill of sale of his personal property to J. L. Moon, in consideration of support and maintenance during the life of deceased. Two years thereafter Alexander H. Moon died, leaving no property upon which the will could operate. On these facts the referee to whom the case had been referred reported that by the agreement and will the plaintiff was to take only such property as the deceased should leave at his death; that the conveyances between deceased and defendant, J. L. Moon, "were perfectly legitimate, and were not a fraud on the rights of plaintiff," and she was not entitled to recover. But the circuit court took a different view of the case, and decreed the title of the property to be in the plaintiff. The defendant appealed, and the Supreme Court, in an opinion affirming the judgment of the circuit court, said:

"The second question, which, as counsel for appellant says, is presented in this case, we think more precisely stated as follows: Could A. H. Moon, after having entered into an agreement with plaintiff, that if she would come and live with him and take care of him, he would give her all his property at his death, and after having executed his will to that effect, and after she had performed her part of the agreement as far as he would permit her to do so, afterwards absolutely defeat and destroy the provision made for her in his will in consideration of her services, by conveying to

a third person, who had notice of the agreement, all his property? . . . Some point is made of the use of the words, 'all the estate of lands and personal property *that I may die possessed of, and moneys on hand at my death,*' as tending to show his intention to reserve the right to dispose of his property before his death. But that is true of every will, which is ambulatory and capable of revocation. A will speaks at the death of the testator, and can only operate upon such property as he may own at the time of his death. Hence the words which we have italicized were useless, as the will would have had the same effect without these words as with them. . . . Both upon principle and authority, we have no doubt that A. H. Moon could not defeat the testamentary provision made for plaintiff in his will, by the conveyance. To allow A. H. Moon, after having received and enjoyed the consideration upon which his promise to give his property, at his death, to the plaintiff, rested, and after having, in recognition of such promise, actually executed his will to that effect, to defeat such testamentary provision by this conveyance to his son, would be a palpable fraud on plaintiff, which a court of equity should not and will not tolerate. . . . But it is said that A. H. Moon complied with his promise to plaintiff by making his will giving her all the property of which he died seized and possessed. This, as it seems to us, we must say, is a mere play upon words. To say that a person has fulfilled his agreement to give to another all of his property at his death, in consideration of valuable services performed, by making his will in accordance with such agreement, and then to turn right around and effectually destroy such testamentary provision by conveying away all of his property to another, leaving nothing whatever upon which the will could operate, would be 'keeping the word of promise to the ear and breaking it to the hope.' Such a mode of performing an agreement certainly cannot be recognized by a court of

equity. Besides (quoting again from the case of Bolman v. Overall, 80 Ala. 451): 'As said by Lord CAMDEN, in Dufour v. Pereira, quoted by Hargrave in his Judicial Arguments, vol. 2, page 310, "there is no difference between one's promising to make a will in such form, and making such will with a promise not to revoke it." ' "

In Carmichael v. Carmichael, supra, husband and wife each owned certain real estate and personal property. The husband executed a will by which he left to his wife all of his personal property, absolutely, and his real estate for and during her life, remainder to their children in specified portions. The wife also made a will, by which she gave her personal property to her husband, absolutely, and her real estate to him for life, remainder to three of their children. The husband died first, and the wife accepted the benefits of his will, but instead of letting her land remain subject to the provisions of her own will, she conveyed it to certain of her children, taking a lease back from them to her during her life. The other children, feeling aggrieved by the mother's conveyance, instituted suit against her and the children to whom she had conveyed, to establish their claims under her will. The court said:

"We have no doubt from the two wills and their terms, and the oral evidence connecting them, that the father and mother came to a mutual understanding and agreement as claimed by the complainants; that the wills were made for the express purpose of securing to complainants an equal undivided share of ninety acres of land . . ; that the making of one will was an inducement to the making of the other; and that the contract and inducement of the father has been carried out and performed by his death with the will executed and standing as he promised; that the children all knew of these wills [a fact admitted by the answer in the case at bar], and the arrangement and purpose under which they were made. . . . The will and contract

of the father having been performed on his part with her, the children having acquiesced in the contract and had their full share, can these defendants . . . now, in fraud of the complainants' rights, acquire this forty acres at Ann's [the mother's] death? We think not. If they can, it must be because some narrow technicality stands in the way of justice. . . . It is to be remembered, however, that the contract on the part. of the father has been fully performed, and that Ann Carmichael, the mother, has received and accepted the benefits of such performance. A court of equity, under these circumstances, will not permit her to rescind this contract. . . . The non-fulfillment of this contract on the part of Ann Carmichael would be a fraud which equity will not allow.''

So, in Robinson v. Mandell, 3 Cliff. (U. S.) 169, it is said:

''Where two persons agree each with the other to make mutual wills, and both execute the agreement, it is held that neither can properly revoke his will without giving notice to the other of such revocation. The death of one of the parties in such a case carries his part of the contract into execution, and the better opinion perhaps is, that the other party, after that event, if the agreement was definite and satisfactory, cannot rescind the contract. [Dufour v. Pereira, 1 Dick. Ch. 419; 2 Harg. Jurid Arg. 272.] Both wills, it is agreed, even in a case where the agreement between the respective testators is fully proved, are still in their nature revocable; but the doctrine is, that the parties are under a restriction, each to the other, not to revoke their respective wills so as to secure any undue advantage. Bound by the agreement to maintain good faith, each to the other, the conclusion is, that neither can revoke without giving due and seasonable notice. . . . Judge Story says that a contract to make mutual wills, if one of the parties has died having made a will according to the agreement, will be decreed in equity to be

specifically executed by the surviving party, if he has enjoyed the benefit of the will of the other party.  [1 Story's Eq. Jur., sec. 785.]  If the parties enter into a fair and definite agreement to leave each other a sum of money, or to settle by their wills the property of each for the benefit of the survivor, a court of equity, says Roper, will enforce a performance of such agreement. [Roper on Leg., 766.]''

In Edson v. Parsons, 155 N. Y. 555, two aged maiden sisters, living together, made separate wills at the same time.  By the provisions of each will the survivor was to take three-fourths of the other's estate, and also the remainder of the other fourth, after paying certain legacies; at the time of the death of the survivor, what remained of the property (after the payment of certain legacies), was to go to a brother, named.  Upon the death of one of the sisters, the survivor made a different will, and upon her death the brother brought suit for the purpose of obtaining a judgment which should declare a will made by Mary A. Edson, deceased, in August, 1884, being her first will, to be valid and binding as a contract between the sisters to give their property ultimately to him.  The court said:

''It was not claimed by appellant that there was any formally expressed contract between the sisters; or that such a contract for the making of mutual wills is evidenced except by the wills themselves, and by some facts relating to and illustrating their making and execution and the strong attachment which united the sisters to their brother. . . . I fully concede that there is no reason in law, nor any public policy, which stands in the way of parties agreeing between themselves to execute mutual and reciprocal wills, which, though remaining revocable upon notice being given by either of an intention to revoke, become, upon the death of one, fixed obligations, of which equity will assume the enforcement, if attempted to be impaired by

subsequent testamentary provisions on the part of the survivor. The proposition is one which may be regarded as having been accepted generally. [1 Jarm. Wills, 27; 2 Story, Eq. Jur., sec. 785; Schouler, Wills, sec. 454; Lord Walpole's Case, 3 Ves. 402.] A court of equity would, in such an event, proceed upon the ground that the survivor was bound, not merely in honor, but by his agreement and by the acceptance of the benefit which that agreement procured for him. In such case, obviously, no remedy at law would be adequate to the party in whose interest and for whose ultimate advantage the testamentary agreement had been entered into. Therefore, equity would perform its high function of supplying the relief which rules of law are not sufficiently elastic to comprehend; and recognizing the obligation which, in conscience and in honor, rested upon the surviving party, would decree a specific performance of the testamentary agreement, by compelling those persons into whose possession the property affected may have come to account for and to deliver it over to the complainant, for being impressed with a trust in his favor.''

This class of cases is distinguishable from that class in which a stranger in blood seeks, under an alleged parol agreement with the deceased, to take the property from the latter's heirs, in that in such cases the evidence must be clear and convincing in order to the enforcement of the will, while in this class of cases a preponderance of the evidence will suffice. In the case at bar the intention of the husband and wife is clearly shown by the joint will. In Dufour v. Pereira, 1 Dick. Ch. 419, it is held that when a husband and wife make a joint will of their separate properties, it may be presumed from the will itself that the provisions made by the one were induced by the provisions made by the other.

As was said in Carmichael v. Carmichael, supra, ''We have no doubt, from the two wills, that the mother

and father came to a mutual understanding; . . . that the making of one will was an inducement to the making of the other.''

Conceding the joint will as embracing only such property as each, the husband and wife, had at the time of his or her death, and that the testator might have thereafter sold and disposed of his property in good faith, or ''given it away,'' as said in Van Duyne v. Vreeland, supra, under the authorities cited, it was a fraud in fact and in law for him to convey it to others, voluntarily and without consideration, reserving to himself a life estate, and in this way make a disposition of his property, both by deed and by will, different from that for which he contracted with his wife in the joint will. There can be no question, we think, that the testator executed those voluntary conveyances and made the subsequent will for the purpose of defeating the joint will, which acts were, in our opinion, ineffective for that purpose.

Our conclusion is that the facts as found justified the judgment and decree and that it should be affirmed. It is so ordered.

All concur.