LEO TUTUNJIAN et al., Respondents, *v.* GEORGE E. VETZIGIAN, as Executor of HELEN TUTUNJIAN, Deceased, et al., Appellants, et al., Defendants.

Argued June 1, 1949; decided July 19, 1949.

*Leo L. Walton* for George E. Vetzigian, as executor of Helen Tutunjian, deceased, appellant. I. The 1942 will by itself is insufficient to constitute a contract not to revoke. (*Rastetter* v. *Hoenninger,* 214 N. Y. 66.) II. The 1929 agreement did not bar the testators from changing their wills so far as their respective distributees and next of kin were concerned. (*Tillman* v. *Ogren,* 227 N. Y. 495.) III. The 1942 will supplemented by the 1929 will and agreement do not constitute an agreement not to revoke so far as respondents are concerned. (*Wallace* v. *Wallace,* 216 N. Y. 28; *Matter of Ditson,* 177 Misc. 648.)

*Charles G. Coster* and *John J. Perna, Jr.,* for Mantouhi S. Heditsian and others, appellants. I. Respondents' proof failed to establish that the will dated April 25, 1942, executed by Mihran Tutunjian and Helen Tutunjian, his wife, was an irrevocable contract. (*Rastetter* v. *Hoenninger,* 214 N. Y. 66; *Edson* v. *Parsons,* 155 N. Y. 555; *Wallace* v. *Wallace,* 216 N. Y. 28.) II. Recovery by respondents is precluded by reason of the provisions of subdivision 7 of section 31 of the Personal Property Law.

*Henry W. Schober* for respondents. I. The judgment is amply supported by the evidence and is in accordance with well-established doctrine. (*Starling Realty Corp.* v. *State of New*

*York,* 286 N. Y. 272; *Edson* v. *Parsons,* 155 N. Y. 555; *First Nat. Bank of Springfield* v. *Dana,* 79 N. Y. 108; *St. Regis Paper Co.* v. *Hubbs & Hastings P. Co.,* 235 N. Y. 30; *Utica City Nat. Bank* v. *Gunn,* 222 N. Y. 204; *Hermann* v. *Ludwig,* 186 App. Div. 287, 229 N. Y. 544.) II. Sufficient writing exists to comply with section 31 of the Personal Property Law. (*Hermann* v. *Ludwig,* 186 App. Div. 287, 229 N. Y. 544.)

FULD, J. The appeal, here by our permission, concerns the efficacy of a single joint will as a contract by each of the two testators not to revoke the will and to dispose of his respective estate in the manner specified.

In 1929, Mihran and Helen Tutunjian, husband and wife, entered into a written agreement whereby each agreed to leave his property to the other, and, on the same day, executed a joint will providing for such a disposition. In addition, the will also recited that, upon the death of one of them, " then we or the survivor of us do bequeath and devise all our property " equally among Mihran's brothers and Helen's brother and sisters.

In 1942, thirteen years later, Mr. and Mrs. Tutunjian executed another joint will, identical in plan and substance with the 1929 instrument, except that it was brought up to date by substituting a different executor and omitting the names of the legatees who had died in the interim. The new will, opening with this declaration,

" We, MIHRAN TUTUNJIAN and HELEN TUTUNJIAN * * * do hereby make, publish and declare this to be our Last Will and Testament ",

read, in part, in this way:

" FIRST: We direct that all our just debts and funeral expenses be paid as soon after our death as is practicable.

" SECOND: We hereby bequeath and devise all our property, wheresoever the same may be situate, to the survivor of us, to his or her heirs or administrators, to have and to hold forever.

" THIRD: " In the event that HELEN TUTUNJIAN predecease MIHRAN TUTUNJIAN, or MIHRAN TUTUNJIAN predecease HELEN TUTUNJIAN, or if we should die under such circumstances as to make it uncertain which of us died first, then we, or the survivor of us do bequeath and devise all our property both real and personal, which we may hereafter acquire, in common or indi-

vidually, or that we are entitled to, to the following in the following manner ''.

As indicated above, the beneficiaries named were the husband's two brothers and the wife's four sisters — each group, it being specified, to receive jointly one half '' of our property ''.

The Tutunjians lived happily together until the husband's death in 1944. The 1942 will had not been changed, and Helen offered it for probate. Mihran had accumulated an estate of about $45,000, and all of it went to the surviving wife in accordance with the provisions of the will; apart from that, Helen possessed no property except a bungalow worth about $600. She died seven weeks after her husband, but, between his death and her own, she executed a new will, wherein she gave her entire estate — with one small exception — to her own kin. That will was offered and admitted to probate.

This present action was then brought by the deceased husband's relatives against the executor and beneficiaries named in Helen's will for specific performance, on the theory that the latter had agreed to devise and bequeath her estate as provided for in the joint will, that is, equally between her own relatives and those of Mihran.

A will is, of course, always ambulatory and revocable until death, the last one executed being deemed the testator's will. As long ago as 1769, however, it was held that one so inclined may bind himself by a mutual or joint will to dispose of his estate in a specified and agreed manner. (*Dufour* v. *Pereira,* 1 Dick. 419, 2 Hargrave's Juridical Arguments, p. 304.) If, in violation of the agreement so made, one of the parties to the joint will executes a new one, the latter is recognized as his last testament, but the courts will require its executor and beneficiaries '' to perform the contract '' of their decedent. (See *Dufour* v. *Pereira, supra,* 2 Hargrave, p. 309.) Indeed, to permit the one who survives to gain the benefits of the joint will and then to flout its provisions in violation of the promise made to the other '' would be a mockery of justice ''. (*Mutual Life Ins. Co.* v. *Holloday,* 13 Abb. N. C. 16, 24.) The principle, supported by reason and equity, has been followed in this State (see *Edson* v. *Parsons,* 155 N. Y. 555; *Rastetter* v. *Hoenninger,* 214 N. Y. 66; *Hermann* v. *Ludwig,* 186 App. Div. 287, affd. 229 N. Y. 544) as well as in other jurisdictions. (See *Frazier* v. *Patterson,* 243 Ill. 80; *Curry*

v. *Cotton,* 356 Ill. 538; *Bower* v. *Daniel,* 198 Mo. 289; *Baker* v. *Syfritt,* 147 Iowa 49.)

In our view, the courts below were justified in finding that the parties had agreed not to revoke the 1942 will and to make the bequests therein provided. While the mere execution of a joint reciprocal will may not suffice to establish such a contract (see *Rastetter* v. *Hoenninger,* 214 N. Y. 66, 72, *supra*; *Hermann* v. *Ludwig,* 186 App. Div. 287, 300–301, affd. 229 N. Y. 544, *supra*), the language used by the testators in this case supplies evidence of such an underlying obligation. Thus, it is " We ", not " I, Mihran, and I, Helen ", who make and publish " this " to be " our ", not " my ", last will and testament; it is " We ", not " I ", who direct that all " our " debts and funeral expenses be paid, and as soon after " our " death as practicable; it is " We ", not " I ", who bequeath and devise " all our property " to the " survivor of us "; and, finally, it is " we, or the survivor of us ", who bequeath and devise " all our property " in the manner specified upon the earlier death of the other. In short, just as in the *Rastetter* case, so here, the language of the disposing clause " imports the joint disposition of the collective property of both, not the independent disposition by each of his own " (214 N. Y., at p. 72).

If there could be any doubt, it is removed by the 1929 contract and will. The 1929 contract expressly provided not only that Mihran and Helen " agreed " to leave their property to each other but went on to recite that they had this day " simultaneously with the execution of this contract " executed " mutual wills ". The joint will thereupon executed contained the additional provision for their respective relatives. Since that instrument must be read in the light of the contract pursuant to which it was drawn, the inference is strong that the testators at the time intended and agreed to provide not only for themselves but for their collateral heirs. The fact that the 1942 will, made thirteen years later, preserved and repeated the same dispositions without substantial change indicates, plainly we believe, that the parties had not abandoned their earlier design and that the 1942 will related back to their agreement and testamentary disposition of 1929.

The contract of the parties being established, it is enforcible in equity. As noted above, the court may not set up the joint

instrument of 1942 as Helen's last will and testament but it may compel performance by her later-named beneficiaries of the obligations which she had assumed. Those beneficiaries are to be deemed to hold half of her estate as a resulting trust in favor of the husband's relatives — those who, though the beneficiaries of the joint will, were cut off by the wife's later will.

The judgment should be affirmed, with costs to all parties appearing separately and filing separate briefs payable out of the estate.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and BROMLEY, JJ., concur.

Judgment affirmed, etc.