ILLA RICH, Also Known as ILSELOTTE RICH, et al., Appellants, *v.* HENRY MOTTEK et al., as Executors and Trustees under the Will of MARGARET MOTTEK, Deceased, Respondents.

First Department, July 6, 1961.

*Elliott J. Solomon* of counsel (*Garfield, Salomon & Mainzer,* attorneys), for appellants.

*Charles Feit* of counsel (*Zalkin & Cohen,* attorneys), for respondents.

BERGAN, J. In the State of New York, but in the German language, Ludwig Mottek and Margaret Mottek, executed in 1946 a joint will, a dispute as to the terms of which has resulted in this action in equity. The testators, who had lived most of their lives in Germany, were husband and wife. The instrument was entirely handwritten. They had two daughters, who are plaintiffs in this action against the executors of the wife.

The words which give rise to the controversy are these: " we spouses mutually appoint ourselves heirs, if neither one of us remarries. In the latter case there would have to be a prior settlement with our children. Therefore the survivor of us is the sole heir of the predecedent, whereas our children are appointed heirs of the last decedent spouse."

Shortly after Ludwig's death in 1950 Margaret executed a new will in which she revoked the 1946 joint will, but made the two daughters sole beneficiaries; but in 1955 she executed a new will; and although she there provided for the two daughters, she did so by dividing her property into two parts and setting up a trust for the payment of the income to the benefit of each daughter for life.

The remainder of the trust for the daughter Helene Arnhym was given to Helene's issue, who survived her; the remainder of the trust for the daughter Illa Rich first was constituted a trust for life for her husband, and the remainder was given to

nieces and nephews of the testatrix, the children of her brother Albert Kastan.

Between the death of Ludwig, and the execution of the first new will by Margaret, the two daughters, Helene Arnhym and Illa Rich each executed a release and assignment in the usual form to their mother, Margaret, in respect of the estate of their father Ludwig.

In identical language instruments released and assigned " unto my mother, Margaret Mottek  *  *  *  all of my right, title and interest, both legal and equitable, in and to any and all property " of Ludwig " that I now or hereafter may claim, demand, own or be or become vested with or entitled to under or by virtue of any of the terms, provisions, conditions and trusts contained in any Last Will and Testament of my said father ".

In this action in equity the two daughters seek to undo the trust provisions for their benefit in their mother's last will; and on the theory that the mother was bound by an irrevocable contractual undertaking with her husband to devise all the property she had obtained through her husband's will absolutely to the daughters, plaintiffs seek a decree in equity having this result upon the mother's estate. After a trial, the court at Special Term granted judgment for the defendants.

On appeal plaintiffs argue that the mother's last will made " no provisions " for the plaintiffs " as absolute heirs " but provided " only for a trust "; and they describe as the theory of their action, the contention that this testamentary disposition by the mother " was unlawful and illegal and in violation and breach of the agreement and understanding had with her husband Ludwig Mottek and in violation of the promises and representations made by her in the reciprocal will agreement ".

There is a recognized difference between a joint will and mutual wills; but this difference is largely in form and manner of execution. When it is claimed that a testator who has executed either a joint or a reciprocal will is bound not to make a later and different disposition of his property, the obligation arises on familiar principles of contract and the role that the instrument or instruments play is to afford evidence of that contract.

The joint will or the reciprocal wills are read to gain enlightenment on an intention, if any, of the testators to bind themselves against subsequent inconsistent testamentary disposition of property to which they have title.

A fairly good logical case may be made out that the mere fact alone of executing a joint will can be enough to establish

prima facie an agreement by each not to make a different disposition without some notice before the death of either. But this result has been squarely considered and rejected in New York. (*Rastetter* v. *Hoenninger*, 214 N. Y. 66.) "We are not prepared to say that the mere fact of a conjoint, reciprocal testamentary disposition by two persons establishes a contract not to revoke, although that seems to have been Lord CAMDEN's ruling in *Dufour* v. *Pereira* \* \* \* a case often cited. Such wills are rare and, it may be, more nearly import a contract than separate mutual wills " (MILLER, J., p. 72).

In *Rastetter* v. *Hoenninger* the court closely examined the text of the joint will to search out the intention of the testators. Words were weighed carefully, one by one, to probe into the possible contractual implications of the document because the court was essentially seeking to determine whether there was " a valid agreement " to make " a particular testamentary disposition of his property " (p. 71).

In the end, it was not the mere fact of a joint will having been made, or of any singular expression used, but the totality of the effect of the language; and form of its usage, which led the court to hold there was a binding contract.

Judge MILLER concluded that although " no one of the foregoing considerations standing alone might be sufficient to establish a contract, the cumulative effect of all when viewed together is so persuasive as unexplained to prove that the joint will was made pursuant to an agreement " (pp. 72–73).

This opinion is a very careful description of a narrowly circumscribed rule in New York as to what in such circumstances will constitute a testamentary contract; and it is a rule which ultimately turns upon the factual evaluation of each testamentary text and the events surrounding casting of the text which may throw light upon the contractual intention of the parties beyond the dispositions immediately in hand. And this, of course, has been a consistent direction of decisional law in New York in considering joint wills (*Tutunjian* v. *Vetzigian*, 299 N. Y. 315) and mutual wills (*Wallace* v. *Wallace*, 216 N. Y. 28; *Edson* v. *Parsons*, 155 N. Y. 555; *Matter of Bekker*, 283 App. Div. 609).

When we look closely at the text of the will before us we see no express limitation on the power of the other spouse to make a different testamentary disposition. In two places they gave each other their property without any term of restriction except remarriage, i.e., " we spouses mutually appoint ourselves heirs, if neither one of us remarries "; and " the survivor of us is the sole heir of the predecedent ".

No such powerful expression of contractual finality was here as the words " this and this only to be our last mutual and joint will and testament ", that, appearing twice, once in the beginning and once at the end of the will, the court in *Rastetter* v. *Hoenninger* found to have marked significance on contractual intent (p. 72). Indeed, Judge MILLER noted that the words " and this only " in that will strongly tend to indicate an understanding that neither was to make a different testamentary disposition of his property in the future, " for otherwise those significant words twice carefully used were meaningless " (p. 72).

We find no inference of contractual limitation in any of the expressions of the instrument before us. When the words are closely examined it is to be seen that the husband and wife used a different expression when dealing with themselves as beneficiaries from that which they used in dealing with their two daughters.

They said " the survivor of us is the sole heir " of the other; " whereas " (a word suggesting transition to antithesis) the daughters " are appointed heirs of the last decedent spouse ". It seems a fair inference, and we would not in any event attribute error to the court at Special Term for adducing it, that greater stability in the benefit was thus intended by each spouse for the other than for the children.

It is argued by appellants that " sole " was appropriate to the single beneficiary envisioned as between the spouses themselves; but could not have been used accurately as to two daughters, and hence its omission as to them had no significance. But we think it had greater significance in omission as to the daughters than number. As to the spouses, it surely meant an interest in each other's property that would be complete and plenary; and as to the daughters, its omission in close context seems to negative, at least, any firm contractual obligation between husband and wife to make unconditional gifts to the daughters; and that is the focal point of this litigation.

No substantial error has been shown on this record on the limitations placed by the court on the testimony of the German lawyer. The accuracy of the English text before us is conceded and the intrinsic language as thus accurately translated is the guide to intention of a New York will under New York law. Besides this, no sufficient offer of testimony in the scope suggested was made on the trial.

The judgment should be affirmed, with costs.

VALENTE, J. (dissenting). On March 27, 1946, Ludwig Mottek and his wife, Margaret Mottek, then residents of Kew Gardens,

in Queens County, New York City, executed a holographic document written in the German language, which they declared to be their "Joint Testament". In this jointly executed will, it was acknowledged that Ludwig was married to Margaret, and that there were two children of the marriage: Helene Arnhym nee Mottek and Ilselotte Rich nee Mottek. The document then continues as follows:

"We are not restricted in the disposition of our property and we are in full possession of our senses.

"2. Under this premise, we spouses mutually appoint ourselves heirs, if neither one of us remarries.

"In the latter case there would have to be a prior settlement with our children. Therefore the survivor of us is the sole heir of the predecedent, whereas our children are appointed heirs of the last decedent spouse."

Following the signature of Ludwig, and the names of the attesting witnesses, there appears the statement: "The foregoing Testament of my husband Ludwig Louis Mottek shall also be deemed to be mine." Margaret Mottek's signature, subscribed the same time as Ludwig's, is attested to by the same witnesses.

Ludwig Mottek died on August 22, 1950. After his death, his widow Margaret revoked the will executed by her on March 27, 1946, and executed a new will on October 8, 1955, with a codicil of the same date. Margaret Mottek died on January 25, 1957. She was survived by her two daughters, the plaintiffs in this action. Margaret's will, dated October 8, 1955, was admitted to probate in the Surrogate's Court, Nassau County, on May 14, 1957.

In the 1955 will, Margaret made no provision for the two daughters as absolute heirs. Instead, the will set up the balance of the estate into a trust consisting of two equal shares and gave the income for life from one of the shares to each of the daughters. The remainder of the trust for Helene Arnhym was given to her issue her surviving. As to the trust for the daughter Illa Rich, it provided that upon her death, her husband would receive the income for life, if he survived her, and upon the death of the survivor the remainder was to be paid over to certain named nieces and nephews of Margaret Mottek, who are the children of her brother, Albert Kastan.

An action was brought by the daughters of Margaret Mottek to impress a trust upon the property belonging to the estate of Margaret Mottek and to have the property distributed to plaintiffs in accordance with the joint will executed by Ludwig Mottek and his wife, Margaret, in 1946.

After trial, the complaint was dismissed on the ground that the joint and reciprocal will failed to disclose any express agreement between Ludwig Mottek and his wife and additionally that the evidence was insufficient to imply an agreement to make the daughters the sole heirs of the property of Margaret's estate.

In approaching the problem presented on this appeal, it is necessary at the outset to distinguish between a "joint will" and "mutual wills" for much of the seeming contradictions in the cases arise from the indiscriminate use of the terms. (See Joint, Mutual, and Reciprocal Wills, Ann. 169 A. L. R. 9, 11.)

"A joint will, as distinguished from mutual wills, is a single testamentary instrument that embodies the testamentary plan of two or more persons and is separately executed by each of the testators using the instrument." (1 Page, Wills [Bowe-Parker Rev.], p. 551.)

"Mutual wills occur where the parties to a common plan each execute separate distinct instruments rather than using the same instrument. It is only when the provisions of the separate instruments are reciprocal, identical, or substantially similar that we call them mutual wills." (1 Page, Wills [Bowe-Parker Rev.], p. 553.)

(See, also, 2 Jessup Redfield, Surrogates Law and Practice, §§ 630, 631.)

In *Tutunjian* v. *Vetzigian* (299 N. Y. 315) — a case involving a joint will by a husband and wife — FULD, J., said (pp. 319-320): "A will is, of course, always ambulatory and revocable until death, the last one executed being deemed the testator's will. As long ago as 1769, however, it was held that one so inclined may bind himself by a mutual or joint will to dispose of his estate in a specified and agreed manner. (*Dufour* v. *Pereira*, 1 Dick. 419, 2 Hargrave's Juridical Arguments, p. 304.) If, in violation of the agreement so made, one of the parties to the joint will executes a new one, the latter is recognized as his last testament, but the courts will require its executor and beneficiaries ' to perform the contract ' of their decedent. (See *Dufour* v. *Pereira, supra,* 2 Hargrave, p. 309.) Indeed, to permit the one who survives to gain the benefits of the joint will and then to flout its provisions in violation of the promise made to the other ' would be a mockery of justice '. (*Mutual Life Ins. Co.* v. *Holloday*, 13 Abb. N. C. 16, 24.) The principle, supported by reason and equity, has been followed in this State (see *Edson* v. *Parsons*, 155 N. Y. 555; *Rastetter* v. *Hoenninger*, 214 N. Y. 66; *Hermann* v. *Ludwig*, 186 App. Div. 287, affd. 229 N. Y. 544) as well as in other jurisdictions. (See *Frazier* v.

*Patterson,* 243 Ill. 80; *Curry* v. *Cotton,* 356 Ill. 538; *Bower* v. *Daniel,* 198 Mo. 289; *Baker* v. *Syfritt,* 147 Iowa 49.) ''

Whether joint or mutual wills are involved, the mere fact of the making of the reciprocal testamentary dispositions is not enough; there must be a contract between the parties to make the will irrevocable before there can be enforcement in equity. In *Rastetter* v. *Hoenninger* (214 N. Y. 66, 72) it was pointed out that in the case of a joint will a contract may be imported more readily than where mutual wills are before the courts. So, too, in *Hermann* v. *Ludwig* (186 App. Div. 287, 301, affd. 229 N. Y. 544) it was stressed that a joint will may itself furnish the requisite proof of an agreement, whereas in mutual wills no necessary inference could be drawn that the wills were the result of any agreement. In both of those cases, as in *Tutunjian* v. *Vetzigian* (*supra*), the courts examined the language of the joint will and found persuasive evidence that the will was made pursuant to a contract.

So, too, in *Frazier* v. *Patterson* (243 Ill. 80) ; *Curry* v. *Cotton* (356 Ill. 538) ; *Bower* v. *Daniel* (198 Mo. 289) and *Baker* v. *Syfritt* (147 Iowa 49) (all cited in *Tutunjian* v. *Vetzigian, supra*), joint wills were sustained as having been made pursuant to agreement. In *Frazier* v. *Patterson* (*supra,* p. 86), the court remarked that where parties execute wills by the same instrument it seems that such a course would not be adopted without some prior agreement between them, especially where the parties are husband and wife.

If some common denominator were sought among the authorities, it would appear that where a joint and reciprocal will is executed by husband and wife, there is a tendency to favor a presumption that the joint will was executed pursuant to a contract not to revoke after the death of the party first dying. The fact of the execution of a joint will is, however, not conclusive of the existence of a contract, but the contract may be inferred from the terms of the joint will and the circumstances under which it was executed.

The extent to which the courts will go to find a contract where a husband and wife have executed a joint will is best demonstrated by the circumstance that no case in this State has been called to our attention nor found by independent research where such a contract was not implied in a husband-wife joint will situation. Significantly, on this appeal, respondent relies on *Matter of Bekker* (283 App. Div. 609) and *Matter of Gudewicz* (72 N. Y. S. 2d 838), both of which involve mutual wills. As already indicated, the problem presented by mutual wills differs from that of a joint will, and the courts have been

more exacting in the proof necessary to establish a contract apart from the execution of the mutual wills. It might be pointed out that even in the last mutual will case to reach the appellate courts, a contract was found. (*Oursler* v. *Armstrong*, 10 Misc 2d 654, affd. 8 A D 2d 194, appeal dismissed 6 N Y 2d 998.)

Adverting to the circumstances surrounding Ludwig and Margaret Mottek in March, 1946, the evidence shows a husband and wife living happily together and having two children who were the natural objects of their parents' bounty. Husband and wife had emigrated to this country from Germany a few years before the execution of the holographic document written in the German language. Evidently the Motteks talked and wrote in German, and it is a fair inference they thought and acted in terms of their German background.

That German background can well explain the use of a joint will in disposing of their property by testament. Although joint and mutual wills are a comparatively recent development in the United States, they have for centuries been instruments of common use in Continental Europe. Particularly in Germany, the joint will of a husband and wife was authorized by the German Civil Code which provided that after the death of one of the parties, the survivor can no longer revoke his disposition. (See Rheinstein-Contracts To Make A Will, 30 N .Y. U. L. Rev., 1224, 1229–1230; Eagleton-Joint And Mutual Wills, 15 Cornell L. Q. 358, 359.)

Since the joint will was written in a foreign language, the Trial Judge should have permitted testimony by an expert, offered by plaintiffs, as to the custom and usages of persons utilizing the particular language in the will to determine whether there was an intent to make a contract. However, such testimony was not necessary since even from the language herein, as translated in the record, there is sufficient indication of an agreement or arrangement. (See *Matter of Nelson*, 200 Misc. 3; *Elwyn* v. *Comeau*, 8 Misc 2d 704, affd. 5 A D 2d 748.)

The joint will speaks in terms of plural designation. The document is entitled a "Joint Testament". It refers to the fact that "*We* are not restricted in the disposition of *our* property". (Italics supplied.) The plural pronoun "we" rather than the singular "I" is used throughout. Moreover, the phrase "our children are appointed heirs of the last decedent spouse" connotes a contract rather than an orthodox bequest or devise.

Moreover, in paragraph "3" of the joint will, provision is made for equalizing the shares of the daughters in the event

money is received from Germany. Such a provision is consistent only with a conclusion that the parties were contracting in an unqualified manner to leave their property, on the death of the survivor, to their daughters.

The Trial Judge laid entirely too much stress upon the fact that the survivor of the spouses is designated as "the sole heir" of the "predecedent", and that as to the children, the word "sole" was omitted. This was clearly an inconsequential difference which had no pertinency in the determination of the existence of a contractual obligation. There can be no question of the meaning of the joint will in making the children the beneficiaries of the estate upon the death of the survivor of Ludwig and Margaret Mottek. The language is important only on the question of whether a contract can be implied from the document and surrounding circumstances.

Considering the surrounding circumstances and the language of the joint will itself, there should have been a finding of the existence of a contract which equity will enforce.

The judgment appealed from should therefore be reversed and judgment entered in favor of the plaintiffs as prayed for in the complaint.

McNALLY and STEVENS, JJ., concur with BERGAN, J.; VALENTE, J., dissents and votes to reverse in opinion, in which RABIN, J. P., concurs.

Judgment affirmed, with costs to respondents.