Dye, J.
(dissenting). Under date of March 17, 1953, the decedent, Isaac Levingson, then upwards of 89 years age, entered into a formal written agreement with his four adult children by which the parties undertook to pay to his wife, Elizabeth, then 22 years younger and mother of the children, *808 as party of the third part, in the event the income to his wife upon his death from property left to her under his will plus the income from securities then held by his wife did not amount to the sum of $15,000 annually, from the income from their stocks in three wholly owned closed corporations “ such sum sufficient to make up a total income of Fifteen Thousand & 00/100 ($15,000.00) * * * for each year for as long as the said party of the third part shall live.”
The agreement recited a consideration in the sum of $1 each to the other in hand paid and the further consideration that the decedent agreed “ to constitute the parties of the first part [his four children] as the residuary legatees ” under his last will and testament. The mother, as party of the third part, also covenanted to constitute the four children “ as the residuary legatees ” under her last will and testament.
Contrary to everyone’s expectations, the wife predeceased the decedent on November 7, 1956. The decedent survived her by nearly four years, dying at the age of 97 on August 27, 1960.
Following his wife’s untimely death, the decedent executed a will under date of December 10,1956 in which he made a number of small bequests to grandchildren, servants, a brother and two hospitals, and left the remainder to his four children in equal shares. Subsequently, the testator executed three codicils to the will: the first executed on September 12, 1957 established a trust (consisting of a list of secured sinking fund bonds of the 165 Broadway Building, Inc.) for the establishment and maintenance of a scholarship fund for female students of Stern College for Women (part of Yeshiva University). He named his four children as trustees of the fund.
The second codicil, that of February 2, 1960, bequeathed a house and lot at 273 Dumont Avenue, Brooklyn, to his daughter, Edna Katz, absolutely, and bequeathed an additional $5,000 to Mary Joseph, his housekeeper and one of the original legatees, in recognition of her ‘ ‘ faithful service ’ ’.
Finally, on April 4, 1960, decedent executed a third codicil by which he gave an additional $100,000 face amount of bonds (which he listed) absolutely to Yeshiva University to be used to provide scholarships for deserving women of Stern College for Women. The testator also, by this codicil, revoked the gift in trust to his children to establish a scholarship fund, as previously provided in the second codicil and gave that property directly to the university. The bequest to the Yeshiva Scholar *809 ship Fund thus aggregated securities having a face value of $200,000.
The agreement was prepared by Mr. Katz, defendant’s son-in-law, and by Abraham Levingson, one of decedent’s sons, both attorneys at law. The 1956 will and the first codicil were prepared by outside counsel, one Adler, and two later codicils were prepared by another attorney, one Gordon, without the prior knowledge of the plaintiffs.
Underlying this action for specific performance of the March 17, 1953 agreement, the plaintiffs contend that the three codicils individually and together violate the agreement and that disposition of the decedent’s estate should be in accordance with the provisions of his last will and testament dated December 10, 1956, this for the reason that under the agreement the decedent had obligated himself to leave the balance of his estate to the children after provision had been made for his wife. They do not contest the small specific bequests which have been paid. All that is involved is the bequest of approximately $200,000 to the defendant Yeshiva University.
Following a full dress trial of the issues, Hon. Meier Steikbrixk, Special Referee, determined that neither the will nor the codicils complained of violated the agreement, and rendered judgment dismissing the complaint and the cross complaint on the merits, without costs. In reaching this conclusion, the learned Referee- read the contract as a negative agreement in derogation of the testator’s right to dispose of his property as he saw fit; that it could not be enforced since it contained no affirmative language specifically forbidding the father to dispose of his property as he saw fit, so long as he bequeathed any remainder to his children “as residuary legatees”; that, at most, all the agreement accomplished was to create a hope in the minds of the children that the father ‘‘ would leave substantially all of his estate to them, after providing for the mother ”. While, literally speaking, this agreement contains no specific provisions restricting the father from disposing of his property, it nonetheless is instinct with the idea that the father, in consideration of the children’s obligation to make up any difference in income to the wife for life, obligated his estate against dissipation other than for the mother’s needs, pending the event, and that the children obligated themselves with that in mind.
In these circumstances, it seems crystal clear that, if the father’s covenant to constitute his children “residuary lega *810 tees ’ ’ meant anything at all, it was that they should receive the residue of his estate after the primary purpose of earing for the mother had been satisfied. No other purpose is suggested in the agreement or by the surrounding circumstances, since any diminution was primarily for the mother’s welfare. True it is that the words ‘1 residuary legatees ’ ’ have an accepted meaning in law, but nothing in the application of that phrase can be pointed to as permitting the court to disregard what to me seems a perfectly normal and logical construction of a contract instinct with the idea that the respective estates of the parties to the agreement were being obligated to make sure that the mother would have suitable lifetime provision. That does not mean that the father could not make a will — which in fact he did and it has been probated — or that he could not make a codicil, but, in this setting, the parties must be deemed to have understood and intended that, in exercising such testamentary right, the father could not relieve his estate from the antecedent obligation made in recognition of a good, valid and sufficient consideration. This construction is confirmed by not only the mother’s will made of even date[1] with the agreement, but by the father’s will dated December 10, 1956, which the children chose not to question and as to which omission the learned Referee commented: “ The fact that they chose not to contest a few small legacies — even though they considered them violative of the agreement — is not a waiver, abandonment or rescission of the agreement so far as it affects the two bequests which are complained of.”
It has long been recognized in law that persons competent to contract may validly agree to dispose of their estates in a particular way (Phalen v. United States Trust Co., 186 N. Y. 178; Rastetter v. Hoenninger, 214 N. Y. 66; Tutunjian v. Vetzigian, 299 N. Y. 315). Such contract, however, must be in writing (see Personal Property Law, § 31, subd. 7). It has also been held that the parties to such an agreement during their respective lifetimes may of course use the property in any manner consistent with the agreement short of making a testa *811 mentary disposition or gift to defeat the purposes of the agreement (Rastetter v. Hoenninger, supra). The agreement if breached may, by way of an action for specific performance, be enforced against any party (Matter of Pasquariello, 11 N Y 2d 864) as well as the survivor (Tutunjian v. Vetzigian, supra; Hermann v. Ludwig, 229 N. Y. 544) for to permit the one who survived to gain the benefits of the agreement and then to flout its provisions in violation of a promise made to the other would be a mockery of justice. Here, we need not pause to consider whether the parties actually intended to provide, by agreement, for the disposition of their estates, for the agreement conclusively establishes that they did. And it seems equally obvious that the agreement, as made, is supported by adequate consideration. The Special Referee rationalized his determination on the theory that, so long as the father had in fact named his children residuary legatees, he had satisfied his end of the bargain. While it is true that the residuary estate, after giving effect to the Yeshiva bequest, is still substantial, such circumstance affords no rational basis for disregarding the fact that the parties undertook to obligate themselves for a special purpose and that, in doing so, they were entitled to the benefit of the expressed consideration motivating the obligation. It is not for the court to say whether the children should be satisfied with what they got but, rather, what they were entitled to within the four corners of the agreement.[2] To hold otherwise would be to deny effect to and frustrate the legitimate object of the agreement (Mencher v. Weiss, 306 N. Y. 1, 7).
The mother, having predeceased the father, made the father’s obligation all the more binding. He was the beneficiary under the mother’s will. The mother, as a party to the agreement, had a right to expect the father to live up to his obligation to the children without diminution of the assets by gifts to outsiders. It has long been the rule that in respect to a contract regarding the disposition of an estate, just as in respect to a *812 will, “ a construction should he given which prefers the blood of the testator to strangers ” (Morgan v. Sanborn, 225 N. Y. 454,461).
Quite recently we dealt with a similar question in Rich v. Mottek (11 N Y 2d 90). The subject of the agreement in that case (in form of a joint Avill) was “ on the part of the husband and wife to provide, at death, first for each other and then for their children ’ ’; the wording being ‘ ‘ Therefore, the survivor of us is the sole heir of the predecedent, whereas our children are appointed heirs of the last decedent spouse.” The wife survived the husband and executed a new will. In the new will, after providing for gifts of $2,500 to each daughter, the mother created a trust of the income which was to go to each daughter in equal shares for life. The remainder of the share of one daughter was left to her children while the remainder of the other daughter’s share went ultimately to the children of the mother’s brother. The courts below dismissed the complaint of the daughters on much the same line of reasoning as employed here. We reversed and granted the relief demanded in the complaint. Our reversal came after the decision below had been rendered. In the Rich case, as here, there were no specific words of restriction. Here, as in Rich, the children are entitled to the whole of an estate as against an outsider (Morgan v. Sanborn, supra). In construing the contract as it did, the courts below made a new contract for the parties by failing to follow out the clear intent of the parties made in the light of the surrounding circumstances. Their intent being evident, the contract should be construed to carry it out (Edison Elec. Illuminating Co. v. Thacher, 229 N. Y. 172; Wood v. Duff-Gordon, 222 N. Y. 88).
For these reasons, I dissent and vote to reverse the judgment appealed from and to grant the relief demanded in the complaint and the cross complaint, with costs in all courts.
Judgment affirmed.

. The mother executed a will of even date with the agreement. By it she gave the residue of her estate to her husband and, in the event he predeceased her, then the residue of her estate was bequeathed to her children equally. A 1954 will made by the father was marked in evidence as t( Exhibit B” but not received, since it was deemed of no evidentiary value subsequent to the probate of the will of December 10, 1956.

. The Referee found that the gross estate amounted to $890,000 and a net estate before taxes and as reduced by the specific bequests of $33,000 was at least $734,000 and that after the bequests of securities to Yeshiva are allowed, as further reduced by approximately $190,000, and by the taxes estimated at $150,000, the sum available for distribution to the children as residuary legatees would amount to about $375,000, a sum the Referee regarded as substantial and not at all like the situation in Morgan v. Sanborn (225 N. Y. 454) On which the appellants rely.