Nathan R. Sobel, S.
This is a motion by. the executrix requesting the Surrogate to fix the New York estate tax (Tax Law, § 249-w).
The papers allege that the executrix made a motion to fix the tax, returnable on March 16, 1972. Although the State Tax Commission (Commission) was duly served, no order fixing the tax has, two years and nine months later, been submitted to the Surrogate. The executrix requests the Surrogate to act in his judicial, rather than administrative capacity, and to. fix the tax (Tax'Law, § 249-w).
The Commission has appeared but has made no response, formal or informal, to the. relief requested by the taxpayer. For the nature of the Commission’s objections, the court must rely on the information imparted to it by the moving papers. It is there stated that the taxpayer was informed iby the Commission that its decision in this and other cases is awaiting determination of pending appeals on related issues.
This court is sympathetic with the Commission’s desire to protect State revenues. However, none of the eases in which appeals are pending are relevant to the issue in this case.
This tax problem, like so manv in other areas of the law, is created by a joint will. The Commission, depending on the outcome of some pending appeals, proposes to deny to the taxpayer a marital deduction of $60,800 (allowed in the Federal return) on the ground that under the terms of the will the interest passing to the surviving spouse is a “ -terminable ” interest (Internal Revenue Code of 1954 [IT. S. Code,lit. 26, § 2Q56, subd. (b)]). In simple terms, the Commission contends that although the disposition to Mrs. Tatkow, the surviving spouse, is of “ all ” property “ absolutely and forever ”, an interest which, concededly would be entitled to the marital deduction, a later disposition passes such - property contractually and irrevocably on Mrs. Tatkow’s death to the couple’s children. Since the children will 11 possess or enjoy” such interest in property upon Mrs. Tatkow’s death, it is contended by the Commission that the interest passing to -her from the decedent, Mr. Tatkow, *391 is “ terminable ” (Internal Revenue Code of 1954 [IT. S. Code, tit. 26, § 2056, subd. (b), par. (1), el. (B)]).
To establish its contention that Mr. Tatkow’s will contractually and irrevocably disposes of the same interest passing absolutely to Mrs. Tatkow to third-party beneficiaries, the Commission relies on a few decisions of our appellate courts construing joint wills on issues which have no relation to the availability of the marital deduction, and where equitable rather than legal principles control the conclusion. This same mistake is evident elsewhere. (Matter of Opal v. Commissoner of Internal Revenue, 450 F. 2d 1085, discussed in Matter of Kahn, N. Y. L. J., Aug. 5, 1974, p. 13, col. 2.)
Preliminarily we mention briefly the pending appeals referred to in the moving papers. It is observed with regard to the appeals in Matter of Tricarico (68 Misc 2d 1018) and Matter of Kahn (supra), that both Surrogate Laubino and this court agreed with the Commission that the wills there in issue were contractual in nature. We both allowed the marital deduction on alternative grounds not relevant to the issue in this proceeding. In the third case (Matter of Gold, N. Y. L. J., Aug. 5, 1974, p. 13, col. 1) this court did find the will to be “ noncontractual ”. However, it is axiomatic that no two wills are alike: the will here under consideration is distinguishable from the Gold will. And, parenthetically, it is observed that even when there are similarities in the dispositive language employed, extrinsic circumstances surrounding execution of a joint will are as often determinative as the provisions of the will itself. (Edson v. Parsons, 155 N. Y. 555, 557.) Otherwise it would be impossible to reconcile many of our high court decisions. The point made is that nothing in the pending appeals will be dispositive of the issue raised in this proceeding.
Because the tax issue raised by the Commission has been raised in other cases, some general principles are mentioned.
i
As observed, the Internal Revenue Service has allowed the marital deduction to the taxpayer. Indeed where there is a Federal disallowance, the issue is invariably determined administratively or judicially under Federal jurisdiction. It is only when there has been a final Federal determination in favor of the taxpayer that a State judicial determination may be required. However, our Tax Law (§ 961, subd. [a], par. [3]), provides that “ a final federal determination * ® * determine [s] the same issue for purposes of the tax under this article *392 [Tax Law, art. 26] unless such final federal determination is shown by a preponderance of the evidence to be erroneous.” (See Matter of Behm v. State Tax Comm., 19 A D 2d 234, 236, affd. 14 N Y 2d 826.) When the Federal tax authorities have allowed a deduction, the statute places the burden of proof and the burden of producing evidence on the Commission. As this court observed in Matter of Kahn (N. Y. L. J., Aug. 5, 1974, p. 13, col. 2, supra) the 'Surrogate is often required to rule for the taxpayer when in a first instance submission it might very well rule for the Commission. (See Matter of Barrie, 77 Misc 2d 933.) This was a consequence of the enactment of section 961 recognized iby the Commission yet recommended as desirable to assure conformity with Federal law in the estate tax area where conformity was deemed essential. (See Memorandum of State Dept. of Taxation and Finance in support of L. 1962, ch. 1013, McKinneys Session Laws of 1962, p. 3538.) It is pointless after a ‘‘ final federal determination ’’ for the Commission to rest its contention on the provisions of a will such as is in issue in this case without offering extrinsic evidence to establish the Federal determination “ to be erroneous.” ,
The Internal Revenue Service very properly regards the marital deduction as merely a postponement of the tax. The general policy, as expressed by Congress, is to allow the deduction in the estate of the first spouse to die when the same interest in property, if unconsumed, will be taxable in the estate of the surviving spouse. (Northeastern Nat. Bank v. United States, 387 U. S. 213, 221; S. Rep. No. 1013, 80th Cong., 2d Sess. [1948], p. 28.) Thus if the interest is in trust or legal life estate with remainder over to designated remaindermen, the marital deduction will be disallowed because the interest in property will escape taxation in the estate of the - surviving spouse. Where, however, as in the instant case, the interest in property passing to the -surviving spouse is of “ all property absolutely and forever ”, to deny the marital deduction in the estate of the first to die will result in double taxation for inevitably the same interest will be taxed in the estate of the surviving spouse.
Congress has also expressed its concern that the marital deduction will not be lost to a taxpayer because of inept will draftsmanship. The marital deduction statute makes provision for ‘ ‘ disclaimers ’ ’ by third-party beneficiaries when a disposition over to -such beneficiaries upon the death of the surviving spouse, places the availability of the marital deduction in question. '
*393 n
With respect, it is observed that the Commission has failed to consider a 'basic distinction between a tax issue and other issues arising from joint wills. Tax issues are rare — indeed none in this State appears to have reached an appellate court. Other issues recur with greater frequency and many — some 40 odd — have been decided by our appellate courts. The Commission seeks to apply the legal principles applicable to the latter class of cases, to a tax issue.
A tax issue, one almost invariably involving the availability of the marital deduction, can arise only in the estate of the first of the joint will makers to die.
Other issues in joint will cases, those which recur frequently, almost invariably arise in the estate of the last (survivor) of the joint will makers to die. And, these will arise only if and when the survivor has in his lifetime, made a new and different will contrary to a binding contract between the spouses. A few decisions consider also the right of the survivor to make inter vivos gifts contrary to the agreement. (See the excellent discussion of the latter issue by Mr. Justice Hyman in Di Lorenzo v. Ciancio (80 Misc 2d 193, and cases discussed.) In determining in such joint will cases whether a survivor is contractually and irrevocably bound with respect to the gift over to third-party beneficiaries, the courts have applied equitable principles not at all applicable to tax issues. Those principles are expressed in Rich v. Mottek (11 N Y 2d 90, 93-94): “ However, ‘ after the agreement [has] been executed by one dying without making a different testamentary disposition of his property and after the acceptance by the other of the benefits of the agreement, it [becomes] obligatory upon the latter and enforcible in equity upon his death.’ (Rastetter v. Hoenninger, 214 N. Y. 66, 73.) In other words, if the survivor of the two testators breaches the contract by executing a will other than that agreed upon, the courts will compel his executors to ‘ perform the contract ’. (Tutunjian v. Vetzigian, 299 N. Y. 315, 319; see, also, Hermann v. Ludwig, 229 N. Y. 544.) Indeed, as we observed in the Tutunjian case (299 N. Y., at p. 319), ‘ to permit the one who survives to gain the benefits of the joint will and then to flout its provisions in violation of the promise made to the other ‘ ‘ would be a mockery of justice ”. (Mutual Life Ins. Co. v. Holloday, 13 Abb. N. C. 16, 24.) ’ ” (See, also, Schwartz v. Horn, 31 N Y 2d 275, 279.) These are equitable principles based on unjust enrichment of the survivor.
*394 A first equitable principle is -that the survivor having made a contract with the first to die not to revoke the joint will, cmd having gained the benefit of such a contract, may not contrary to such an agreement, divert the property to others than the intended third-party beneficiaries. The courts must therefore determine in the first instance whether or not the spouses are contractually bound inter se. However, in a tax issue, it does not matter in the least whether the spouses, as 'between themselves, are contractually bound or not contractually bound. Whether the interest in property passes to the survivor voluntarily or pursuant to a contract, the estate of the first to die is entitled to the marital deduction (Newman v. United States, 176 F. Supp. 364).
A second principle applied is to determine whether the survivor has breached the contract by failing to perform. The courts search the provisions of the will to determine whether the survivor was contractually bound to leave the property to the third-party beneficiaries — and if found to be so, will compel his executors to perform. A decision whether to specifically enforce the contract turns on the existence of an intention of the joint will makers at the time of execution to contractually bind the survivor. However, in a tax issue, there is no need to search for the intention of the joint will makers. It may be presumed that when the spouses leave “ all ” property to the survivor “ absolutely and forever ” (rather than a life estate with income only or a trust with remainder over to named beneficiaries) they do intend to obtain the benefit of the marital deduction. Nor do the third-party beneficiaries ever contest the right of the estate of the first to die to obtain the benefit of the marital deduction — there is no decision on record where this has been done.
The point is that in a tax case, where the issue is the availability of the marital deduction to the estate of the first to die, there has been no breach of a contract, no unjust enrichment, no division of assets and no “ mockery of justice ” to require the intervention of a court of equity or the application of equitable principles.
The distinction here made, while not articulated, is evident from the few cases which have considered the marital deduction problem arising from joint wills. (Matter of Silverman, 43 Misc 2d 909; Matter of Barrie, 77 Misc 2d 933, supra; Dekker v. United States, 245 F. Supp. 255; Poage v. Phillips, 202 F. Supp. 267; Matter of Aquilino, 31 T. C. M. 906.)
*395 That such distinction exists may reasonably be inferred from the decisions which hold that a tax decision allowing the marital deduction would not be res judicata in any subsequent proceeding by the third-party beneficiaries to compel performance of the contract by the executors of the last of the spouses to die. (See Matter of Zeh, 281 App. Div. 926; and Matter of Nortz, 272 App. Div. 485 and cases cited.)
m
Some practical considerations are mentioned.
Whenever articulated to their draftsmen, the reason most often expressed by the spouses for making a joint will is to save the survivor the trouble and expense of making a new will.
No doubt, at least at the time of execution, they have the then intention of leaving to the survivor of them their individually owned property. Often this will be expressed by the use of the words ‘ ‘ agree ” or “ agreement ’ ’. Whether they intend the joint will to be irrevocable inter se depends on whether the terms used represent their actual intention or merely the draftman’s mannerisms. But as discussed, when the issue is the availability of the marital deduction, it does not matter in the least whether the spouses intended that they would be contractually bound inter se or not so bound.
When the joint will contains also a further disposition over to third-party beneficaries, there is also little question but that at the time of execution they intend that their property upon the death of the survivor shall pass to these intended beneficiaries.
•Whether or not they also intend irrevocably to bind the survivor to the ultimate disposition over is rarely expressed in explicit terms in the will itself although occasionally it is so expressed by separate written agreement outside the will. (See, e.g., Tutunjian v. Vetzigian, 299 N. Y. 315; Schwartz v. Horn, 31 N Y 2d 275, supra; Di Lorenzo v. Ciancio, 80 Misc 2d 193, supra.)
In those cases where the third-party beneficiaries seek the intervention of a court of equity to compel the executor of the survivor to perform the contract, the issues for the court are:
“ Did the joint makers intend that the disposition over should be contractually and irrevocably binding upon the survivor? ” Or “ were the joint makers merely expressing their present, and therefore revocable, intention ultimately to pass their property to the objects of their mutual concern and bounty? ”
*396 A will is by nature ambulatory and to remain so must of necessity be revocable. Social events such as death or marriages or economic changes in the circumstances of the survivor or the intended third-party beneficiaries will often require changes in the will. As the decisions, discussed infra, hold, the presumption is that revocability was intended unless irrevocability is clearly and convincingly expressed in unambiguous terms.
We turn to the consideration of Mr. and Mrs. Tatkow’s joint will.
David Tatkow died testate on January 23,1971. A joint (and reciprocal) will was executed in 1965 by testator and his wife, Frances. The will has been admitted to probate in this court. The pertinent provisions of the will are as follows:
The exordium clause provides: '
“ We david tatkow and franges tatkow, being husband and wife and having agreed between ourselves to make a Joint and Mutual Last Will and Testament to carry out our agreement and intention to make certain provisions for the distribution of our property after the death of either of us and after the death of our survivor * * * do hereby make, publish and declare this to be our Last Joint and Mutual Will and Testament. * # *
“ third: Upon the death of either of us, we do hereby give, devise and bequeath unto our survivor all our property * * * for his or her benefit as the case may be, absolutely and forever.
“ fourth : Upon the death of our survivor, we do hereby give, devise and bequeath all of our property * * * which may be possessed by our survivor at the time of his or her death to our beloved sons elliott h. and miohael j., share and share alike, absolutely and forever.” "
We put aside the distinction discussed between tax cases and those in which the equitable intervention of the court is sought by the beneficiaries to enforce a contract. Apart from the provision of paragraph fourth which cuts down the absolute interest given to the survivor under paragraph third, the only evidence of an enforceable contract is in the provision of the exordium expressing an intention to make an “ agreement ” for the distribution “ of our property after the death of either of us and after the death of our survivor.” (Emphasis added.)
The quality of proof required to establish a contract enforceable in equity is discussed in Lally v. Gronen (247 N. Y. 58, 62-63): “ ‘ As a will an instrument is revocable at pleasure, but as a contract, if supported by adequate consideration, it is enforcible in equity.’ (Rastetter v. Hoenninger, 214 N. Y. 66, *397 71.) ‘ The evidence required to show a contract by one deceased, to dispose of his property in a certain manner after his death, must be clear and convincing, or it will not be regarded as sufficient. ’ (Wallace v. Wallace, 216 N. Y. 28, 39.) The agreement depended upon for the award of the relief demanded must be clearly and definitely established by full and satisfactory proof. ‘ To attribute to a will the quality of irrevocability demands the most indisputable evidence of the agreement, which is relied upon to change its ambulatory nature, and that presumptions will not, and should not, take the place of proof.’ (Edson v. Parsons, 155 N. Y. 555, 568.) ”
In cases, other than above cited, the courts have determined that the quality of proof, viz., “ clear,” “ convincing,” “ indisputable,” to establish that irrevocability was intended was lacking. (Matter of Zeh, 24 A D 2d 983, affd. 18 N Y 2d 900, supra; Oursler v. Armstrong, 10 N Y 2d 385; Tracy v. Danziger, 253 App. Div. 418, affd. 279 N. Y. 679; Matter of De Lano, 41 A D 2d 880; Matter of Bekker, 283 App. Div. 609; Matter of Aquilino, 53 Misc 2d 811; Matter of Watson, 37 Misc 2d 902.)
To put it another way, there is simply no decision on record in this State, in which a court has specifically enforced a disposition over to third-party beneficiaries in a joint will, where the disposition between the joint makers was in terms of “ all property absolutely and forever.”
The court in Rubenstein v. Mueller (19 N Y 2d 228, 232) in distinguishing the will there involved from the will in Matter of Zeh (supra), made the point as follows: “ The recently decided case of Matter of Zeh (24 A D 2d 983, affd. 18 N Y 2d 900), wherein we held that the joint will in question was not binding upon the survivor, is distinguishable from the present case. In Zeh, the survivor was given all the property, ‘ meaning thereby that the survivor of us shall be the absolute ow'ner, to him or to her to have and to hold, his or her heirs and assigns absolutely and forever, of all that both of us possess.’ (Emphasis added.) Under the rule that before the right to alter or revoke a will may be curtailed prior to the testator’s death his intention to so bind himself must be manifested clearly and unambiguously (see Oursler v. Armstrong, 10 N Y 2d 385, 389), the use of language such as ‘ absolutely ’ barred our finding that the survivor was bound to the testamentary plan found in that joint will.”
The same general principle is expressed in single will cases in Matter of Ithaca Trust Co. (220 N. Y. 437, 441-442): “ A remainder cannot be limited upon an absolute estate in fee. *398 Where a gift is provided by will and such a gift is intended to be absolute, a gift over is repugnant to such absolute gift and void and the purported gift over must be treated as a mere expression of a wish or desire regarding the distribution of such part of the gift as may remain undisposed of at the death of the donee.” (See, also, Campbell v. Beaumont, 91 N. Y. 465; Farmers Loan & Trust Co. v. Kip, 192 N. Y. 266; Mitchell v. Van Allen, 75 App. Div. 297.)
The same rule is also expressed as a rule of construction in Tillman v. Ogren (227 N. Y. 495, 505): ‘ ‘ Where there is an absolute gift * * * in order to qualify it or cut it down the latter part of the will should show equally clear intention to do so by use of words definite in their meaning.”
Some States have enacted statutes requiring “ clear, satisfactory and convincing evidence ” to establish a contractual joint will. (See, e.g., Col. Rev. Stat., § 153-5-41.) In a recent case the Iowa Supreme Court suggested that a clause expressly affirming or denying contractual intent should be included in all joint or mutual wills. (Matter of Croulek, 252 Iowa 700.) This is a caution which should be observed by New York draftsmen.
There have been a few cases in which our courts have specifically enforced a joint will contract in favor of third-party beneficiaries. (Rastetter v. Hoenninger, 214 N. Y. 66; Hermann v. Ludwig, 186 App. Div. 287, affd. 229 N. Y. 544; Tutunjian v. Vetzigian, 299 N. Y. 315, supra; Azzara v. Azzara, 1 A D 2d 1012, mot. for lv. to app. den. 2 N Y 2d 829; Swerdfeger v. Swerdfeger, 4 A D 2d 535; Rich v. Mottek, 11 N Y 2d 90; Rubenstein v. Mueller, 19 N Y 2d 228, supra; Schwarts v. Horn, 31 N Y 2d 275, supra.) The wills in 'these cases were altogether different from the will here involved.
For example:
In Rastetter, the disposition between the spouses was of “ income ” only. Hermann involved the contractual nature of the disposition between the spouses — an issue not relevant to the marital deduction. In Tutunjian and Schwarts the “ contract ” was expressed in written agreements supplemental to the wills. In Assara and Swerdfeger the issue of the contractual nature of the wills was decided below on motions for summary judgment; the courts merely held in each case that the issue was one of fact to be decided at a trial. In Rich and Ruben-stein the courts stressed the factor that the dispositions between the spouses were not “ absolute ”.
*399 As discussed, none of these decisions upon which the Commission relies are at all applicable to a tax issue.
The court determines:
(1) That the taxpayer is entitled to the marital deduction, the Commission having failed by a preponderance of evidence to establish that the ‘ ‘ final federal determination ’ ’ is erroneous. (Tax Law, § 961.)
(2) That the taxpayer is entitled to the marital deduction, since the interest passing to the surviving spouse is absolute and not “ terminable.” (Internal Revenue Code of 1954 [U. S. Code, tit. 26, § 2056; Tax Law, § 955].) The proof before the court does not establish either an express or implied promise between the spouses to make their joint will irrevocable.
(3) The taxpayer would be entitled to the marital deduction, even if the disposition to the surviving spouse was “ terminable,” under the “ exception ” (Internal Revenue Code, of 1954 [IT. S. Code, tit. 26, § 2056, subd. (b), par. (5)]) to the terminable interest rule, -since the surviving spouse receives under the joint will a beneficial power to consume and dispose of the interest in property received without restriction of any kind. The fact that the taxpayer is contractually bound under the terms of a will to leave whatever remains to third-party beneficaries does not disqualify the interest received by him from being allowed the marital deduction. (Matter of Kahn, N. Y. L. J., Aug. 5, 1974, p. 13, col. 2, supra.)
An order has been signed fixing the New York net estate tax at $584.61, without interest or penalties since the delay in payment is the fault of the Commission.