■ CORINNE E. GLASS et al., Appellants, v GIUSEPPE BATTISTA, Also Known as JOSEPH BATTISTA, et al., Respondents.—Judgment, Supreme Court, New York County, entered November 5, 1976, unanimously reversed, on the law and on the facts, vacated and judgment granted in favor of plaintiffs declaring that the joint will executed by Michael and Rose Battista on March 18, 1966 imposed a contractual obligation on Michael to dispose of his assets upon his death to plaintiffs, his daughters, and that plaintiffs as beneficiaries of his contractual obligation are entitled to specific performance against Michael's estate, without costs and without disbursements. The will in question was admitted to probate on September 13, 1967 upon the death of Rose. Michael later remarried. On October 29, 1973, Michael opened two Totten trust accounts, naming each plaintiff the beneficiary of one. However, in March, 1974, he deleted the names of plaintiffs as beneficiaries of the accounts and on May 16, 1974 executed a will specifically excluding plaintiffs "for reasons well known to them". Michael died on September 8, 1974. The joint will provides in pertinent part: "Third. We give to the survivor of us all our property, both real and personal, wherever situated, whether owned by us jointly or severally. Fourth. In the event we die simultaneously * * * or if either of us predeceases the other, then we jointly, mutually and individually give, devise and bequeath all of the rest, residue and remainder of our property * * * to our beloved children." It has long been held that a person may bind himself to dispose of his estate in a specific manner by means of a mutual or joint will. And where, in violation of the agreement, one of the parties executes a new will, this latter instrument will be recognized as his last testament. However, the courts will require the executor and beneficiaries of the subsequent will "to perform the contract" of their decedent. *(Tutunjian v Vetzigian,* 299 NY 315, 319.) "Indeed, to permit the one who survives to gain the benefits of the joint will and then to flout its provisions in violation of the promise made to the other 'would be a mockery of justice.'" *(Supra,* at p 319.) While the mere existence of a joint testament may not in and of itself serve to establish the agreement, the language used by the testators or the circumstances surrounding its making suffice to spell out a contract, particularly in the case of a joint will executed by husband and wife or by parents interested in providing for their children. *(Rich v Mottek,* 11 NY2d 90, 94.) The testamentary language used herein is virtually identical to that employed in *Tutunjian v Vetzigian (supra),* and the intent of the joint testators, who used the first person plural throughout, was clearly to provide for their only children, the plaintiffs herein. This intent is further evidenced by the fact that, other than the testators themselves, plaintiffs were the sole beneficiaries named in the will. Finally, while we find no ambiguity as to the testators' intent, it is well settled that where there is equivocation as to the subject or object of a gift, extrinsic evidence, including testimony of the

draftsman as to the testators' express declarations of intention, is admissible *(Matter of Smith,* 254 NY 283, 290; *Matter of Morrison,* 270 App Div 318, 320). According to the draftsman herein, it was the intention of the joint testators that the survivor would receive the entire net assets of the other spouse and would in turn be obligated upon his or her death to leave the entire net assets to which he or she was entitled at death to their daughters, their only children. Concur—Stevens, P. J., Birns, Capozzoli and Nunez, JJ.